Michael R. LOCKS et al., Plaintiffs and Petitioners,

v.

Melvin LAIRD, as U. S. Secretary of Defense, et al., Defendants and Respondents.

Civ. No. 51076.

United States District Court
N. D. California.

As Amended May 28, 1969.

Albert M. Bendich, Berkeley, Cal., for plaintiffs.

Cecil F. Poole U. S. Atty., Shelton Deutsch, Asst. U. S. Atty., San Francisco, Cal., for respondents.

## ORDER DISMISSING COMPLAINT AND DENYING PETITION

ZIRPOLI, District Judge.

On or about October 10, 1968, the then Secretary of the Air Force issued a general order which reads:

"Recent developments have established a need for clarification of the circumstances in which Air Force members are not permitted to wear their uniform. Accordingly, pursuant to para 1–10d, AFM 35–10, 26 June 1968,[1] the Secretary of the Air Force has specified that *Air Force members will not wear the uniform at any public meeting, demonstration, or interview if they have reason to know that a purpose of the meeting, demonstration, or interview is the advocacy, expression or approval of opposition to the employment or use of the Armed Forces of the United States.* (Emphasis added)

Petitioner Locks, after court-martial proceedings, was convicted on two specifications of violation of Article 92 of the Uniform Code of Military Justice for

---

1. AFM 35–10, Paragraph 1–10 provides: When Wear of the Uniform is Prohibited. Air Force members will not wear the uniform:

a. At any meeting or demonstration that is a function of, or sponsored by any organization, association, movement, group, or combination of persons that:

(1) The Attorney General of the United States has designated as totalitarian, Fascist, Communist, or subversive.

(2) Advocates or approves the commission of acts of force or violence to deny others their rights under the Constitution of the United States.

(3) Seeks to alter the form of the United States Government by unconstitutional means.

b. During or in connection with the furtherance of private employment or commercial interests when an inference of official sponsorship for the activity or interest would be drawn.

c. Under circumstances which would bring discredit upon the Armed Forces.

d. Under any other circumstances that Secretary of the Air Force specifies and publishes.

failing to obey the above stated general order or regulation. This conviction is under military appellate review. Pending review of the record of trial, petitioner was ordered to be confined at the United States Air Force Retraining Center at Lowry Air Force Base, Colorado.

■ Since the issue raised by petitioner Locks in the instant case is the same issue that will be dealt with by the military appellate review,[2] this court should not interfere with such military judicial process. "The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The very matter which brought petitioner Locks before the court-martial and for which he has a pending appeal is the very matter governed by the regulation here in question, hence we do *not* have "a situation in which defense of the State's [here the military's] criminal prosecution will not assure adequate vindication of constitutional rights." Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Under such circumstances Dombrowski is not applicable. The controlling cases here are Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), and Noyd v. McNamara, 378 F.2d 538 (10th Cir.1967) cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). These controlling cases dictate that this court is without jurisdiction as to petitioner Locks and as to him the complaint for injunction and declaratory relief and

the petition for writ of habeas corpus are dismissed.[3]

The remaining petitioners (plaintiffs) in this case—Bright, Williams and O'Connell—are members of the United States Air Force Reserve presently serving on extended active duty and currently stationed at Hamilton Air Force Base, California. They are not under physical restraint in any form and seek to enter this "controversy" on the allegation that they "desire and intend to participate in a similar demonstration [similar to the one petitioner Locks attended in uniform and for which he was convicted in court-martial proceedings] to be held off the Air Force Base on May 30, 1969, and that but for the regulation in question and the punishment being suffered by plaintiff Locks they would do so and wear their uniforms as an expression of their First Amendment freedoms."

These three petitioners contend that the regulation is "unconstitutional, vague, overbroad and discriminatory on its face." With this contention this court cannot and does not agree.

■ It was stipulated at the Court hearing on the order to show cause that *the purpose of the demonstration* of May 30, 1969, *is the advocacy, expression or approval of opposition to the employment and use of the Armed Forces of the United States in Vietnam;* that petitioners desire and intend to wear their Air Force uniforms at said demonstration; and that petitioners can reasonably expect that the regulation (general order) will be enforced against them if they wilfully violate the same. This stipulation adequately presents a "controversy" for the consideration of the court.[4]

2. Petitioner has yet to exhaust his military judicial remedies before the Board of Review of the Air Force and Court of Military Appeals, if this latter court accepts his appeal.

3. For a case in accord in this district, see Locks v. Commanding General, Sixth Army, Civ. No. 50101 (Oct. 9, 1968).

4. The burden alleged by petitioners as a consequence of the Air Force order is sufficient to invoke habeas corpus jurisdiction, 28 U.S.C. § 2241 et seq. Orloff v. Willoughby, 354 U.S. 83, 73 S.Ct. 534 (1953); Goldstein v. Clifford, 290 F. Supp. 275 (D.N.J.1968); see also Carafas v. Lavallee, 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (writ

918

There is no constitutional right of a member of the Air Force to wear his uniform when and wherever he pleases. There can be no doubt that the Air Force may by proper orders regulate the use of the Air Force uniform by which individuals wearing that uniform are identified with the Air Force.

But, petitioners contend, conceding the above to be true, the regulation in question is not a "proper" regulation since, as they allege, enforcement thereof violates their assured freedom of speech.

The petitioners' claim rests on the fundamental proposition that the display of symbols can be "speech" which enjoys First Amendment protection. It has long been established that the display of unofficial symbols is protected by the First Amendment, Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (decided February 24, 1969), and that freedom from coerced acceptance of official symbols in violation of religious scruples is also protected by the First Amendment, West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

The power and universality of symbolic forms of communication was recognized by the Supreme Court in West Virginia State Board of Education v. Barnette, *supra* at 632–633, 63 S.Ct. at 1182:

Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind. Causes and nations, political parties, lodges and ecclesiastical groups seek to knit the loyalty of

their followings to a flag or banner, a color or design. The State announces rank, function, and authority through crowns and maces, uniforms and black robes; the church speaks through the Cross, the Crucifix, the altar and shrine, and clerical raiment. Symbols of State often convey political ideas just as religious symbols come to convey theological ones. Associated with many of these symbols are appropriate gestures of acceptance or respect: a salute, a bowed or bared head, a bended knee. A person gets from a symbol the meaning he puts into it, and what is one man's comfort and inspiration is another's jest and scorn.

The key that unlocks the present dispute is the understanding that there is no necessary relationship between the symbol and that which is symbolized.[5] A common example of this fact is that a "v" formed with the forefinger and middle finger is today a symbol for peace, whereas twenty-five years ago it was a symbol for victory in war. The point is that a symbol takes on an *assigned relationship* to the thing symbolized based primarily on the context of its use.

A military uniform is a symbol, and the issue in this case is whether it may be used in a context expressly contrary to the purposes and values intended by the Secretary of the Air Force. This court holds that if the Secretary of the Air Force commands that the uniform not be worn at events of the nature in question, the First Amendment does not command otherwise. To permit members of the military to display at will the primary symbol of their military service would be to permit the destruction of the very symbolic effectiveness which the uniform is intended to enjoy.[6] This court does not find it vio-

issues to cure political disabilities); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963): The Great Writ is not a "static, narrow, formalistic remedy," id. at 243, 83 S.Ct. 377. The Writ protects against restraints on a man's liberty, "restraints not shared

by the public generally * * *," id. at 240, 83 S.Ct. 376.

5. S. I. Hayakawa, Language in Thought and Action 27 (1964).

6. The power with which a uniform can symbolize the values of patriotism and

lative of the First Amendment for the Secretary to limit the wearing of the uniform to contexts that will promote a sense, not just of membership in the Air Force, but of participation, allegiance, and achievement. The Air Force designs and furnishes the uniform according to its own criteria; the First Amendment does not forbid the Air Force from determining the uniform's *use* according to its own criteria.

This court is mindful that each petitioner took an oath in which he declared: "I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same, and *that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations* and the Uniform Code of Military Justice. So help me God." (Emphasis added).

The general order (or regulation) here in question is an order of the President of the United States and the officers appointed over petitioners according to regulations.

Petitioners overlook the fact that Armed Forces are mobilized for *employment and use wherever the national interests require their employment and use;* that such employment and use is the very purpose their presence in the Armed Forces is intended to serve; that while wearing the uniform of the Air Force they are subject to the commands of the President of the United States and the officers appointed over them; and that to effectively accomplish these objectives as members of the Armed Forces they can and should be subject to such restrictions as are reasonably necessary under the circumstances.

Here in considering the status of petitioners as members of the Air Force and the fact that they are subject to employment and use by the President pursuant to his constitutional authority, the time and circumstances which prompted the regulation may not be ignored.

Were we at peace and not engaged in a "war" in Southeast Asia,[7] time and circumstances might cause us to seriously question the constitutionality of the regulation under review. But at a time of national emergency in which the nation is engaged in one of the costliest wars of our history in the number of lives lost, casualties otherwise sustained and resources expended, attendance *in uniform* at a *demonstration clearly and directly aimed against the very purposes for which our Armed Forces are to be employed and used* runs counter to the oath each petitioner took and constitutes such a flouting of elemental loyalty to the President and the officers appointed over petitioners that it cannot help but have *some* adverse and detrimental effect on the loyalty, discipline, morale and efficiency of the Armed Forces. To conclude that such activity or symbolic speech could not have such adverse effect is unreasonable. The extent of such adverse effect this court need not decide, once it determines, as it does, that *some* adverse effect could be reasonably ex-

---

military prowess was exemplified in France prior to World War I. For almost a century the French army had sported blue coats, a red kepi, and red trousers. As developments in technology enable rifles to fire over greater distances, the need to escape visual detection increased. Efforts to change the uniform to a duller tone than red, however, were defeated by the assertion that "Le pantalon rouge c'est la France." Barbara W. Tuchman, The Guns of August 37–38 (1962). This court cannot say that the First Amendment deprives the military of authority to determine the circumstances

in which such symbolic power is either generated or dissipated.

7. While there is a considerable body of opinion that questions the legality of our actions in Vietnam and thus questions the constitutional authority of the President to employ and use the Armed Forces in the "war" in Vietnam, the Courts have consistently refused to entertain the question. See Mitchell v. United States, 369 F.2d 323 (2d Cir. 1966) cert. denied 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132, rehearing denied 87 S.Ct. at 1042, 87 S.Ct. 1477, 18 L.Ed.2d 616 (1967).

pected to follow. The basic responsibility of determining what constitutes "for the good of the service" when it involves assigning significance to military symbols, is more a military decision than it is a judicial one and hence should be approached by the courts with caution.

"Military regulations must be considered in the light of military exigencies, 'must be geared to meet the imperative needs of mobilization and national vigilance * * *' and great and wide discretion exists in the executive department both in the formation and application of regulations and in their interpretation in such matters as what constitutes 'for the good of the service'." Noyd v. McNamara, *supra* at 540.

■ To ensure against arbitrary action of the state, a free society values robust, vigorous and essentially unlimited public speech and discussion by citizens and protects their right to do so by peaceful demonstrations. But when the *purpose and very objective* of the demonstration *is opposition to the employment and use of the Air Force in Southeast Asia* and when symbolic speech at such demonstration by wearing the uniform of the Air Force will tend to destroy military values through the misuse of the most universal and powerful symbol of those values and thereby adversely affect its effort to fulfill its primary purpose, the employment and use of its personnel in Southeast Asia, a general order or regulation issued to avoid or diminish the danger of such consequences to the Air Force is not only reasonable but imperative.

What this court decides today applies to the Air Force's determination as to the use of its own symbols. Because of the unique situation here involved, this court finds that the regulation, even though restricting only opposition to the use of the United States Armed Forces, is not violative of the First Amendment's ban on selective suppression of expression, Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and on coerced prescription of political orthodoxy, West Virginia State Board of Education v. Barnette, *supra* at 647, 63 S.Ct. 1178. As noted above, exclusion of the uniform from the activity here proscribed is essential to the preservation of the symbolic significance of the uniform. This court therefore finds that the regulation is drawn with the requisite degree of precision and that there is no violation of the doctrine of overbreadth, which the United States Supreme Court has made applicable to cases of this type involving a conflict between the war power and the First Amendment, United States v. Robel, 389 U.S. 258, 262–268, 88 S.Ct. 419, 19 L.Ed.2d 508 n. 20 (1967). The regulation does not circumscribe oral or written speech. The regulation does not prohibit attendance or participation by members of the Air Force in meetings, demonstrations or interviews of the type here in question. Finally, wearing the uniform is prohibited only if there is reason to know the nature of the event in question.

The complaint and petitions are denied, the order to show cause is discharged and the proceedings are in all respects dismissed as to all parties in their capacities as plaintiffs and as petitioners.