[Civ. No. 32200. First Dist., Div. Two. May 30, 1973.]

AARON L. KATZ, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al.,
Defendants and Respondents.

COUNSEL

Aaron L. Katz, in pro. per., and J. Robert Dempster for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendants and Respondents.

OPINION

**TAYLOR, P. J.**—The appeal from a judgment denying appellant Katz' petition for a writ of mandate to compel respondents, Department of Motor Vehicles, et al. (Department), to issue a personalized license plate bearing the letters EZ LAY, presents questions of first impression as to the constitutionality of Vehicle Code section 5105. Katz contends that the statute, first, is vague on its face; second, is overbroad as it lacks a sufficiently definite standard for administrative action; third, the Department's denial of the personalized license plate requested constituted an abridgement of his First Amendment rights of freedom of expression; and fourth, the Department acted arbitrarily in applying the statute to his request. We have concluded that there is no merit to any of these contentions and that the judgment denying the writ must be affirmed.

The basic facts, as set forth in the petition, are not in dispute. Pursuant to the personalized license plate program enacted by the Legislature in 1970 (Veh. Code, § § 5100-5110),[1] petitioner Katz applied for a personal-

---

[1]Pursuant to these provisions, by paying $25 in addition to the regular registration fee (Veh. Code, § 5106), the registered owner or lessee of the vehicle on which the

ized license plate bearing the letters "EZ LAY." The Department refused on the basis of the second sentence of Vehicle Code section 5105 that provides: "There shall be no duplication of registration numbers, and the department may refuse to issue any combination of letters or numbers, or both, that may carry *connotations offensive to good taste and decency* or which would be misleading or a duplication of license plates . . . ." (Italics added.)

■ Katz first contends that the language underlined above is void for vagueness in that there is no sufficiently definite statutory standard; he argues that the statute is not sufficiently explicit to inform him of what conduct would render him liable for penalty and precisely what the statute commands or forbids. ■ The constitutional requirement of definiteness is violated by a *criminal* statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute (*United States* v. *Harriss,* 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808]).

■ Katz' contention overlooks the fact that the instant statute provides no criminal standards of conduct and also does not prescribe any duty or standard of conduct for him. Rather, the statutory standard is directed to the employees of the Department who are charged with the duty of issuing license plates. The only consequence inflicted on Katz is in not receiving the personalized license plate with the combination of five letters that he specified. He was not denied registration of his vehicle nor a license nor subjected to any other penalty. Thus, the instant case is entirely distinguishable from *Perez* v. *Sharp,* 32 Cal.2d 711 [198 P.2d 17], upon which appellant relies. There, the implementation of the statute deprived a citizen of the right to marry the person of his choice. In the instant case, Katz' right to express the language of his choice remains totally unimpaired by the statute as Katz is free to put on his car or in the metal frame surrounding the license plate any combination of words and letters that he chooses. The only restriction on his conduct is the use of the government-issued vehicle identification mechanism for the expression "EZ LAY." (*Joyce* v. *United States* (1971) 454 F.2d 971 [147 App. D.C. 128].)

---

license plates are to be displayed (Veh. Code, § 5104) may specify a combination of two to six numbers or letters that will appear on his license plate (Veh. Code, §§ 5102-5103). The special fees so collected are placed in a special fund to be utilized for purposes of environmental protection (Veh. Code, §§ 5100, 5107). Whenever personalized license plates are transferred, there is an additional transfer fee (Veh. Code, § 5108) and the personalized license plates must be surrender·d on transfer of the vehicle (Veh. Code, § 5109).

Pertinent are the recent cases of *California* v. *LaRue,* decided December 5, 1972, 409 U.S. 109 [34 L.Ed.2d 342, 93 S.Ct. 390] and *Crownover* v. *Musick,* decided May 1, 1973, 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497]. In *LaRue, supra,* a general regulation of our State Department of Alcoholic Beverage Control that prohibited topless and bottomless entertainment, including some acts that were not obscene, was held not to unconstitutionally infringe on the freedom of expression of the licensees. In *Crownover,* our state Supreme Court upheld local ordinances banning topless and bottomless waiters, waitresses and entertainers as regulations of conduct rather than speech, and quoted from an Oregon case, as follows, at page 426: " 'In cases of this kind, the court must look to the substance of the regulation and ask whether the elements of communication which may be present in the regulated conduct are significant enough to bring the entire course of conduct under the protection of the First Amendment.' " More pertinent to the facts of the instant case, however, is *United States* v. *O'Brien,* 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673] wherein the United States Supreme Court sustained, against similar First Amendment contentions, the constitutionality of a federal statute making the knowing destruction or mutilation of a selective service registration certificate a criminal offense.

Chief Justice Warren said in *O'Brien,* 391 U.S. at pages 376 and 377 [20 L.Ed.2d at pages 679-680]: "We cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, *we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.*" (Italics added.) Likewise, here, Vehicle Code section 5105 furthers a substantial governmental interest in vehicle identification consistent with community

standards of good taste and decency, and imposes *at best* a minimal and incidental restriction on Katz' alleged First Amendment freedom of expression.

Katz concedes that the statute contains no criminal sanctions, but quoting from *Small Co.* v. *Am. Sugar Ref. Co.,* 267 U.S. 233, at page 239 [69 L.Ed. 589, at page 593, 45 S.Ct. 295], urges that it demands the exaction of obedience to a rule or standard which is so vague and indefinite as really to be no standard at all. We cannot agree. ■ In order to be valid, a legislative standard for administrative action need be sufficiently definite only to provide directives of conduct for the administrative body in exercising its delegated administrative or regulatory powers (*In re Marks,* 71 Cal.2d 31, 51 [77 Cal.Rptr. 1, 453 P.2d 441]). Accordingly, legislative standards for administrative acts may be expressed in general terms and need not precisely detail the factors that are to govern the administrative agency and its employees (*Sunset Amusement Co.* v. *Board of Police Commissioners,* 7 Cal.3d 64, 73 [101 Cal.Rptr. 768, 496 P.2d 840]). Thus, pursuant to the above criteria, our Supreme Court in *Sunset, supra,* recently upheld as valid for administrative action a legislative standard giving the City of Los Angeles Board of Police Commissioners authority to deny a public permit for a roller skating rink if the operations "would not comport with the 'peace, health, safety, convenience, good morals, and general welfare of the public.' " (Pp. 71-72.) In addition, the courts of this state have upheld authority to lay out and construct all state highways on *the most direct and practicable locations,* as determined by the administrative agency (*Sinclair* v. *State of California,* 194 Cal.App.2d 397 [15 Cal.Rptr. 493]), and the authority to return a narcotics addict to a state rehabilitation center when it would be *"for the best interests of the person and society"* (*In re Marks, supra,* pp. 40, 51; italics added). Also in accord is *Joyce* v. *United States, supra,* page 983, where the court upheld a statute prohibiting physical acts that intentionally *cast contempt upon the flag.*

■ Clearly, the authority here granted to the Department to refuse to issue a personalized license plate that bears "connotations offensive to good taste and decency" constitutes a legislative standard no less definite than those set forth above. As in *Sunset Amusement, supra,* the impact of Vehicle Code section 5105 on Katz' First Amendment rights, if any in fact exists, is at best negligible and incidental. The statute is not directed toward the suppression of any specific idea or expression on the vehicle; it simply excludes from the very limited confines of the governmental mechanism of the license plates those configurations of letters or numbers that the administrative or regulatory body and its employees deem *offensive*

*to good taste and decency.* While the licensee may have both possession and title of the license plates, the plates are also an official mechanism of the state performing the vital governmental function of vehicle identification (Veh. Code, § § 4850, 5202).[2]

The analogous cases relating to the display of the flag recognize that the flag statutes do not prohibit speech, the communication of ideas, or political dissent or protest, but merely prevent the degrading or dishonoring of the particular symbol subject to protection (*Joyce* v. *United States, supra,* pp. 971, 983). Although flags are issued to private citizens, the United States Supreme Court has recognized that the personal dominion and control over such public governmental symbols may properly be limited (*Halter* v. *Nebraska,* 205 U.S. 34 [51 L.Ed. 696, 27 S.Ct. 419]).

Katz erroneously maintains that by instituting the program of personalized license plates, the state has thereby created a forum for the free expression of ideas. It is readily apparent that the state has only permitted minor variations from the precisely prescribed form and shape of the license plate. By permitting to the members of the public a limited input in the formulation of the identifying data to secure a contribution to the environmental defense fund, the state has not altered the nature of the plate as an identifying mechanism nor created an "open forum."

While the First Amendment considerations are at best minimal, if present at all, the state has an additional compelling public interest in protecting from degradation a mechanical identification symbol, such as the license plate. Apart from the *identification function of the plate,* the use of a combination of numbers and letters *as means of communication* would appear to be adverse to the safety of the public on the highways since it would encourage people to read the license plates instead of keeping their eyes on the road. The state has the right to protect the legitimacy, credibility and reliability of its symbols and emblems because of the substantial impact the symbols may have on public attitudes and behavior (*Locks* v. *Laird,* 300 F.Supp. 915, 920; *Halter* v. *Nebraska, supra,* p. 42 [51 L.Ed. p. 701]). The effect that symbols and symbolic settings have in encouraging public acceptance and compliance with socially determined policies is well known (*United States* v. *Ferguson,* 302 F.Supp. 1111). The interest of the state here in protecting the legitimacy of its identification symbol is not directed to the promotion of any particular point of view or the compelling

[2]The applicable statutes require that the license plates display the name of this state along with the registration number (Veh. Code, § 4851) and prohibit the alteration of any markings on the plates (Veh. Code, § 4464) and also provide for seizure of the plates on expiration (Veh. Code, § 4460).

of any given orthodoxy (*Joyce* v. *United States, supra; Parker* v. *Morgan,* 322 F.Supp. 585, 588). In this respect, the state is entirely neutral.

Katz maintains that the instant case is controlled by *Cohen* v. *California,* 403 U.S. 15 [29 L.Ed.2d 284, 91 S.Ct. 1780] wherein the United States Supreme Court reversed the conviction for disturbing the peace (Pen. Code, § 415) of a defendant who, while in the corridor of a county courthouse, wore a jacket bearing the plainly visible words "Fuck the Draft." Katz relies on the portion of the 5-4 opinion (at p. 22 [29 L.Ed.2d at p. 292]) that held California could not excise as offensive conduct one particular scurrilous epithet from public discourse, either upon the theory of preventing violent reactions or for the purpose of guarding public morality.

We have already indicated that here, Katz was not subject to any criminal or civil sanctions. Furthermore, Cohen was involved in a personal form of expression, his clothes. Katz, on the other hand, insists he has the right to express himself within the limited confines of the six letters on a governmentally issued vehicle identification mechanism. The personalized license plate here in issue, while not entirely comparable to the flag, is also a far cry from an intimate personal form of expression involving one's body, as in *Cohen*.[3]

■ Finally, Katz urges that since the Department has, in fact, issued some personalized license plates that have combinations at least as offensive, if not more so, than the one he submitted,[4] the Department acted

---

[3]Likewise distinguishable are: *Healy* v. *James,* 408 U.S. 169 [33 L.Ed.2d 266, 92 S.Ct. 2338], wherein, on grounds of the associational freedom of the First Amendment, the United States Supreme Court directed recognition of a student organization; *Papish* v. *University of Missouri Curators,* 410 U.S. 667 [35 L.Ed.2d 618, 93 S.Ct. 1197], wherein the court citing *Cohen*, reversed, per curiam, the expulsion of the editor of a student newspaper which several times used the term "Motherfucker," and noted that the expression in that context was constitutionally protected, was not obscene, and could not be shut off in the name of "conventions of decency"; and *Gooding* v. *Wilson,* 405 U.S. 518 [31 L.Ed.2d 408, 92 S.Ct. 1103] wherein the court struck down a Georgia statute making it a misdemeanor for any person to use "opprobrious words or abusive language, tending to cause a breach of the peace."

[4]The People do not dispute the issuance of these plates; as the volume containing these is an official publication of the Department, we must take judicial notice thereof pursuant to Evidence Code section 451. The list includes the following:

| | | |
|---|---|---|
| BALL | EZ HOOK | KILLER |
| BALLS | FCK | PUSSY |
| BFD | FERN | 4 PLAY |
| BIPPY | FUCHS | SCREW 2 |
| BJ | HOOKER | SLEEZ |
| BOOBS | HOT BOD | SLEEZY |
| BS | HOT BOX | STUD |
| DIK | HORNEE | VIRGIN |
| EAT OUT | HORNY | |

arbitrarily in denying his request. He urges that the issuance of the 26 personalized license plates listed in footnote 4 indicates the absence of an objective administrative standard for the administration of the statute.

In the first place, only a handful of these can be said to have a single clear sexual connotation, such as the combination EZ LAY submitted by Katz; several of the 26 are ambiguous and may in fact be the proper names or initials of the individuals involved. Since the combination requested by Katz was not a combination of his name or initials, we need not address ourselves to that question. Furthermore, as of January 16, 1973, the Department had issued over 102,000 personalized license plates. The fact that a small percentage of these might not satisfy the statutory standard is no indication of the inadequacy of the standard. At best, it may indicate the advisability of some objective administrative guidelines for applying the portion of the statute here in issue. We conclude that Katz' contention that the Department abused its discretion in denying his requested personalized license plate is not tenable.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied June 29, 1973, and appellant's petition for a hearing by the Supreme Court was denied July 25, 1973.