[No. B064070. Second Dist., Div. One. May 3, 1993.]

ANITA L. KAHN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Respondent.

COUNSEL

Mel Lewis Albaum for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Martin H. Milas and Thomas Scheerer, Deputy Attorneys General, for Respondent.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Petitioner Anita L. Kahn appeals from a judgment denying her petition for a writ of mandate by which she sought to compel respondent Department of Motor Vehicles (DMV) to return her personalized license plates.

### PROCEDURAL AND FACTUAL BACKGROUND

Petitioner is a certified court reporter employed by the Culver City Municipal Court. In approximately 1972, when petitioner received her shorthand reporting license and launched a new career in midlife, her nieces and nephews asked her to show them the court reporting shorthand symbols for the phrase, "if you can." This phrase had great personal meaning to petitioner, in that her mother had adapted a song using the phrase from the story of "The Little Engine That Could." Petitioner had used this phrase as a motivator throughout her life. Her nieces and nephews purchased a personalized license plate for petitioner which bore the court reporting symbols "TP U BG," which can be translated as "if you can." She used this license plate thereafter on a series of automobiles.

In 1989, Pamela Reed completed a "customer inquiry form" at the state fair in which she registered a complaint concerning the following license plates: TPUBG, TPUBGIT, TPUBGOF, TPUBGU and TPUBGUP. She noted: "In stenographic shorthand TP=F [and] BG=CK." She demonstrated that "TP U BG" thus would read as "F," "U," "CK" or "K," and stated that this was "not exactly what should be on our roads." After the DMV received this information, it asked petitioner to surrender her license plates.

According to Nancy Patterson (Patterson), a certified court reporter since 1953 and a shorthand reporting instructor since 1947, more than one key of

the stenographic machine can be stroked at one time; each stroke appears on a separate line. Depending on the number of strokes used in striking identical keys, one could change the meaning of the final product. On the left side of the keyboard, "TP would represent "F" or the word "if." "U" represents that letter or the word "you." "BG" may represent the word "can," the letter "K" or the letter combination "ck." One ordinarily determines the meaning of "T-P-U-B-G" from context. If the configuration stood alone, Patterson would assume it meant the four-letter epithet often referred to as the "F" word. In context, those symbols could mean "if you can." While they could have that meaning when standing alone, as on a license plate, the more probable meaning would be the four-letter epithet.

Within 10 days of instruction, a shorthand reporting student could translate the configuration. Many students drop out without completing their training. There are 6,000 certified court reporters and 40,000 to 50,000 unlicensed reporters in the state, as well as a sizeable number of people who can read some shorthand reporting.

According to Gary Kramer (Kramer), a certified court reporter, his colleagues generally do not write "if you can" in one stroke to avoid a conflict in the interpretation of the symbols. Now that so much shorthand reading is done by computers, it is no longer possible to rely entirely on context; the computer cannot consider context. Standing alone, Kramer's colleagues at the Los Angeles Municipal Court immediately recognized "TP U BG" as the four-letter epithet. This also is one's first reaction to seeing the configuration on a license plate. "T-P-U-B-G" is more likely to be interpreted in that manner than would "TP U BG," but the stenographic machine always writes it in the same fashion regardless of meaning.

Marcus K. Felson is a professor of sociology at the University of Southern California and a senior research assistant at the Social Sciences Research Institute. Professor Felson's special training is in public opinion; he teaches classes in social problems. He is the editor of Sociology and Social Research and a consulting editor of the American Journal of Sociology. The four-letter epithet in question is known generally throughout society; it is the preeminent curse word in this society and thus is insulting if used in reference to someone else. The word is often considered inoffensive among young males when no females are present, unless it is directed at someone in an insulting manner. Before the hearing, Professor Felson asked counsel if he could say the word in court without being cited for contempt. He did not want to offend the court. People may be deeply offended by the word; some even may react violently. A license plate with the word would create a problem, in that it would be seen by those who would be offended. Additionally, the state is actually producing the word and that in itself could be seen as offensive.

According to petitioner, in all the years that she has used her personalized license plate, no one has ever voiced an objection to it even though she has driven vehicles with that license plate to examinations and other functions attended by thousands of court reporters. Petitioner discussed her license plate with one fellow court reporter, who interpreted it as meaning "if you can." On second thought, the reporter realized that it could be read as a four-letter epithet. An attorney who saw petitioner's license plate thought it meant "tip you big." Petitioner had not realized until she received the notice from the DMV that the license plate could have a meaning other than "if you can."

CONTENTIONS

I

Petitioner contends Vehicle Code section 5105, subdivision (b), is unconstitutional on its face and as applied.

II

Petitioner asserts there is insufficient evidence to support the cancellation of her license plate as one carrying "connotations offensive to good taste and decency."

DISCUSSION

I

Petitioner contends Vehicle Code section 5105, subdivision (b), is unconstitutional on its face and as applied. We disagree.

Vehicle Code section 5105 concerns the manner in which environmental license plates, commonly known as vanity plates, may be issued and retained. Subdivision (a) states in part: "There shall be no duplication of registration numbers, and the department may refuse to issue any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency or which would be misleading or a duplication of license plates . . . ." Subdivision (b) permits the DMV to "cancel and order the return of any environmental license plate . . . containing any combination of letters, or numbers, or both, which the department determines carries connotations offensive to good taste and decency or which would be misleading."

*Katz* v. *Department of Motor Vehicles* (1973) 32 Cal.App.3d 679 [108 Cal.Rptr. 424] considered a challenge to subdivision (a) of Vehicle Code

section 5105 after the DMV denied the initial issuance of plates bearing the letters "EZ LAY." (32 Cal.App.3d at p. 682.) Initially, the court rejected a claim that the statutory language is void for vagueness for lack of a sufficiently definite statutory standard, noting "[t]he constitutional requirement of definiteness is violated by a *criminal* statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute [citation].

". . . [T]he instant statute provides no criminal standards of conduct and also does not prescribe any duty or standard of conduct for him. Rather, the statutory standard is directed to the employees of the Department who are charged with the duty of issuing license plates. The only consequence inflicted on Katz is in not receiving the personalized license plate with the combination of five letters that he specified. He was not denied registration of his vehicle nor a license nor subjected to any other penalty. . . . Katz' right to express the language of his choice remains totally unimpaired . . . as Katz is free to put on his car or in the metal frame surrounding the license plate any combination of words and letters that he chooses. The only restriction on his conduct is the use of the government-issued vehicle identification mechanism for the expression 'EZ LAY.' " (*Katz* v. *Department of Motor Vehicles, supra,* 32 Cal.App.3d at p. 682.)

Petitioner argues that *Katz* is wrongly decided and, thus, its holding should be rejected by this court. In support of her argument, petitioner relies largely on *Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268]. In *Erznoznik,* the city attempted to prohibit the showing of movies containing any degree of nudity at drive-in theaters on the ground that it was necessary to protect the sensibilities of unwilling viewers. The court noted that the regulation, through selective restriction, of kinds of speech which simply are more offensive than other kinds is limited to circumstances where the speaker intrudes on the privacy of the home or the degree of the audience's captivity is such that it is impractical for unwilling viewers to avoid exposure. (*Id.* at p. 209 [45 L.Ed.2d at pp. 130-131].) The court continued, "absent the narrow circumstances described above, the burden normally falls upon the viewer to 'avoid further bombardment of [one's] sensibilities simply by averting [one's] eyes.' [Citation.]" (*Id.* at pp. 210-211 [45 L.Ed.2d at pp. 132-133], fn. omitted.) The court struck down the city's ordinance, holding the limited privacy interest of persons on public streets did not justify the sort of censorship in which the city was engaged. (*Id.* at p. 212 [45 L.Ed.2d at p. 132].)

*Erznoznik* is inapposite for the simple reason that the instant matter does not involve an attempt to censor a forum for the free expression of ideas, as

*Erznoznik* did. As the United States Supreme Court noted in *Lehman* v. *City of Shaker Heights* (1974) 418 U.S. 298 [41 L.Ed.2d 770, 94 S.Ct. 2714], concerning the city's provision of space on bus advertising cards, "[h]ere, we have no open spaces, no meeting hall, park, street corner, or other public thoroughfare." (At p. 303 [41 L.Ed.2d at p. 777].) In short, "[n]o First Amendment forum is here to be found." (*Id.* at p. 304 [41 L.Ed.2d at p. 778]; accord, *Katz* v. *Department of Motor Vehicles, supra*, 32 Cal.App.3d at p. 685.) A vehicle license plate is a state-imposed display of registered vehicle identification. That the state permits license holders, for an additional fee, to vary minimally their vehicle identification from the prescribed form by selecting letter and/or number combinations which may reflect an individual's personal or professional identity, or possibly express a thought or idea, is purely incidental to the primary function of vehicle identification. Thus, "the state has not altered the nature of the plate as an identifying mechanism nor created an 'open forum.' " (*Ibid.*)

As *Katz* correctly recognizes, what is at issue here is at best expressive conduct, not speech per se. Accordingly, the standard enunciated in *United States* v. *O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673] applies. (*Katz* v. *Department of Motor Vehicles, supra*, 32 Cal.App.3d at pp. 683-684.) In *O'Brien*, where the defendant had burned his draft card, the United States Supreme Court refused to accord to every expressive action the status of "speech" simply because "the person engaging in the conduct intends thereby to express an idea." (*O'Brien, supra*, 391 U.S. at p. 376 [20 L.Ed.2d at p. 679].) ■ Rather, the court applied the following standard on the assumption that this conduct was "sufficient to bring into play the First Amendment": "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. . . . [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (At pp. 376-377 [20 L.Ed.2d at pp. 679-680]; accord, *Texas* v. *Johnson* (1989) 491 U.S. 397, 406 [105 L.Ed.2d 342, 354-355, 109 S.Ct. 2533].)

■ *Katz* identifies a substantial government interest which the court deems Vehicle Code section 5105 to further as providing official, state-sanctioned vehicle identification which is "consistent with community standards of good taste and decency." (*Katz* v. *Department of Motor Vehicles, supra*, 32 Cal.App.3d at pp. 683-684.) In *Lehman* v. *City of Shaker Heights*,

*supra,* 418 U.S. 298, the city was concerned legitimately with limiting access to transit system advertising space "to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience." (At p. 304 [41 L.Ed.2d at p. 778].) So, too, the state has a substantial interest "in protecting from degradation a mechanical identification symbol, such as the license plate." (*Katz, supra,* 32 Cal.App.3d at p. 685.) That is, the DMV reasonably is concerned with avoiding the abusive use of its vehicle identification system and preserving the legitimacy, credibility and reliability of its official emblem. (*Ibid.*)

The state's substantial interest is unrelated to the suppression of free expression; it neither seeks to prevent the expression of a specific viewpoint or opinion, nor is "directed to the promotion of any particular point of view or the compelling of any given orthodoxy." (*Katz* v. *Department of Motor Vehicles, supra,* 32 Cal.App.3d at pp. 685-686.) Vehicle Code section 5105 does not proscribe conduct which clearly is intended to communicate an idea, viewpoint or opinion; it simply limits to a slight degree the combinations of letters and numbers one may choose as a vehicle identification symbol. The state's interest is the same whether the subject is the standard vehicle license plates the state issues or the more individualized vanity plates. For example, the state would be equally concerned with avoiding the issuance of a standard plate which contained such symbols as "2FUC422" as it would a vanity plate which carried a similar connotation. In that respect, Vehicle Code section 5105 differs from those statutes which attempt to prohibit the "dishonoring" of this nation's flag by burning, the very purpose of which is to express a political opinion. (See *Texas* v. *Johnson, supra,* 491 U.S. at pp. 406-407 [105 L.Ed.2d at pp. 354-355].)

Additionally, "the incidental restriction on alleged First Amendment freedoms" flowing from the application of Vehicle Code section 5105 is a minimal one, directed solely at the expression possible within the limited confines of the seven alphabetical and numerical symbols appearing on a vehicle license plate. (*United States* v. *O'Brien, supra,* 391 U.S. at p. 377 [20 L.Ed.2d at p. 680].) Accordingly, Vehicle Code section 5105 is not unconstitutional on its face.

■ Petitioner further argues that Vehicle Code section 5105, subdivision (b), is unconstitutional as applied to her. The crux of her argument is that the purely visual implication of the symbols on her license plate, "TP U BG," is innocuous unless one has specialized knowledge of a limited-use symbolic language; inasmuch as she has used the plates for 17 years without complaint, it is clear they are not regarded generally as carrying an offensive connotation. Thus, as to petitioner, section 5105 cannot further the governmental interest of preserving the legitimacy of the state's official vehicle

identification emblem. Moreover, she argues, the restriction on her freedom of expression is not minimal and incidental. Since she has "made her philosophical statement in the language of her profession for [17] years[,] [h]er license plate had become part of her identity, her persona, her statement of being and purpose." For these reasons, petitioner asserts, it is unconstitutional to recall her plates pursuant to subdivision (b) of Vehicle Code section 5105.

That petitioner was able to retain her license plate for 17 years simply reflects the DMV's ignorance of court reporting shorthand. It was not until Pamela Reed filed a complaint, noting that such license plates as "TPUBG," "TPUBGIT," "TPUBGOF," "TPUBGU" and "TPUBGUP" were "not exactly what should be on our roads" and explaining the meaning of the symbols "TP," "U" and "BG" in court reporting shorthand as "F," "U" and "K" or "CK," that the DMV realized it had been duped by a group of bawdy wits. As the DMV learned, the offensive meanings of these plates clearly was known to certain of the state's citizens and it thus was in the state's interest to prevent the further abuse and degradation of its official vehicle identification emblem. Similarly, the length of time petitioner retained her license plate does not raise the restriction on her freedom of expression resulting from the recall of the plate above the level of the minimal and incidental. She remains free to express the same sentiment on her vehicle by using a bumper sticker, license plate holder or similar medium; she simply cannot continue to do so via the license plate itself. (*Katz* v. *Department of Motor Vehicles, supra*, 32 Cal.App.3d at p. 682.) Accordingly, Vehicle Code section 5105, subdivision (b), is not unconstitutional as applied to petitioner.

## II

■ Petitioner asserts there is insufficient evidence to support the cancellation of her license plate as one carrying "connotations offensive to good taste and decency." Again, we disagree.

The parties proceeded on the assumption that the trial court was to exercise its independent judgment on the evidence (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395, 398 [188 Cal.Rptr. 891, 657 P.2d 383]), and the trial court did so. ■ On appeal, this court's review of the trial court's findings and judgment is governed by the substantial evidence rule (*Gobin* v. *Alexis* (1984) 153 Cal.App.3d 641, 646 [200 Cal.Rptr. 397]; *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 601 [159 Cal.Rptr. 49]), that is, "whether there is any substantial evidence, contradicted or uncontradicted, which will support the [findings and judgment]." (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66

Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)  ▇  Factual matters and conflicts in the evidence are viewed in the light most favorable to the prevailing party. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) All reasonable inferences as well must be drawn in support of the findings and judgment. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602].)

Petitioner's license plate carries the symbols "TP U BG." This is court reporting shorthand which, translated, has the following alphabetical meaning: "TP" translates to the letter "F," "U" to the letter "U" and "BG" to the letter "K" or letter combination "CK"; thus, petitioner's license plate, as translated, reads "F," "U," "K" or "CK." These particular court reporting symbols also can be translated as words, with "TP" meaning "if," "U" meaning "you" and "BG" meaning "can." Thus, petitioner's license plate could be read as "if," "you," "can." A person typing or reading court reporting shorthand uses context, an element absent from a license plate, to distinguish among meanings.

▇  According to petitioner, she intended her license plate to read "if you can," an expression having great personal meaning to her; she never intended and did not even realize at the time she obtained the plate that it could be read as the common four-letter epithet formed by the symbols when they are interpreted as letters, as demonstrated above. Petitioner's intent is irrelevant. There is abundant evidence that the first reaction of one understanding court reporting shorthand upon reading "TP U BG" as it would appear on a license plate generally is that the plate contains the four-letter epithet often referred to as the "F" word. Without context, few who understand court reporting shorthand would understand the symbols to mean "if you can."

While this particular epithet may have lost some of its shock value in recent years and acquired varied meanings which render it offensive to a smaller segment of the population than formerly was the case, it nonetheless is commonly understood by a substantial segment of the population to be a demeaning, degrading and therefore offensive term for sexual intercourse. There was no need for evidence on this commonly known point, but defendant nonetheless presented evidence from an expert in public opinion that people may be deeply offended by the word. Indeed, its use is sufficiently sensitive that the expert requested advance permission to use the word in court and we refuse to use it in this opinion.

Petitioner argues it is not enough that the translation of the court reporting symbols as the four-letter epithet be offensive; there must also have been

evidence that "TP U BG" in itself is offensive. This is the equivalent of arguing that, in order to be rejected as a license identification symbol, "puta" must be understood as offensive in that form by all those who know no Spanish and thus cannot translate it as "whore." Is a word any less offensive because only 1 or ½ percent of the state's population know the language in which it is expressed? To have a "connotation[] offensive to good taste and decency" (Veh. Code, § 5105), a word need not be understood in that manner by every addressee. The test is what people of ordinary intelligence (who know the language in question) would understand from the use of the word. (See *Lee* v. *Superior Court* (1992) 9 Cal.App.4th 510, 517 [11 Cal.Rptr.2d 763].) There is substantial evidence in this case that there are approximately 6,000 certified court reporters and 40,000 to 50,000 unlicensed reporters in the State of California, as well as a sizable number of other people who understand court reporting shorthand. That represents a significant audience for the offensive meaning into which "TP U BG" ordinarily will be translated. In short, the DMV's decision is supported by substantial evidence.

The judgment is affirmed.

Ito, J.,* concurred. Vogel (Miriam A.), J., concurred in the result only.

Appellant's petition for review by the Supreme Court was denied July 22, 1993.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.