[No. B104511. Second Dist., Div. Two. Nov. 6, 1997.]

RICHARD LOWE, Plaintiff and Appellant, v.
CITY OF COMMERCE, Defendant and Respondent;
CALIFORNIA COMMERCE CLUB, INC., Intervener and Respondent.

### COUNSEL

Josef L. Kopicka for Plaintiff and Appellant.

Beltran, Leal & Medina, Francisco Leal, Agustin Medina, Jr., Arturo N. Fierro, Alvarado, Smith, Villa & Sanchez, Fernando Villa and Raul F. Salinas for Defendant and Respondent.

James G. Faust for Intervener and Respondent.

### OPINION

**ZEBROWSKI, J.**—Richard Lowe appeals from the denial of his petition for writ of mandate challenging an order issued by the City of Commerce (the City) excluding Lowe from a casino owned by the California Commerce Club (the Casino) and licensed by the City.

Section 19820 of the Business and Professions Code provides: "Any city . . . permitting gaming may, by ordinance, provide for the exclusion or ejection from any gaming club of any individual who has engaged in or been convicted of bookmaking, sale of controlled substances or illegal gambling activities, or whose presence in or about gaming clubs would be inimical to the interests of legitimate gaming. No such ordinance shall provide for the exclusion or ejection of any person on the grounds of race, color, creed or sex."

The City enacted an ordinance addressing the removal and exclusion of persons from card club premises. It provides in relevant part:

"A card club licensee ('licensee') shall remove any person from premises licensed for use as a card club ('premises') if, on the premises, that person: [¶] . . . [¶] (4) Is boisterous, or is otherwise offensive to other persons; . . ." (City of Commerce Mun. Code, § 5.56.010(a).)

"A licensee shall exclude from all or any portion of the premises any person who is determined to be 'undesirable' within the meaning of this section. For the purposes of this section, the following persons shall be deemed to be 'undesirable': [¶] . . . [¶] (4) Persons who have been removed from the premises pursuant to Section 5.56.010(a), on more than one occasion; or [¶] (5) Persons whose presence is inimical to the interests of the licensee." (City of Commerce Mun. Code, § 5.56.020(a).)

The City takes the position that because the administrative decision involved in this appeal did not involve a fundamental vested right, this court

applies the substantial evidence rule. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]; *Desmond* v. *County of Contra Costa* (1993) 21 Cal.App.4th 330, 334-335 [25 Cal.Rptr.2d 842].) Lowe does not challenge that position directly, but rather states that his appeal turns on questions of statutory interpretation which must be independently reviewed: whether the ordinances in issue are preempted and whether they are unconstitutionally vague.

The administrative record shows the following. Lowe had been a patron of the Casino for a number of years and had organized gin rummy tournaments there in May and August of 1995. He was involved in a business called Rainbow Bonanza.

Lowe was ejected from the Casino in August 1995, after the conclusion of the second rummy tournament. Lowe's privileges were suspended for 30 days. Lowe testified at the administrative hearing that he had learned from a customer services representative that the grounds for the temporary exclusion were stealing Casino property, not distributing or stealing tip money, distributing videotapes containing sexual material, and being chemically imbalanced. At the administrative hearing, Lowe admitted he had taken a two-by-three-foot board belonging to the Casino, and subsequently reimbursed the Casino $8. He admitted taking 15 percent of certain Casino money as a tip, but said he was entitled to it in connection with the rummy tournament. He denied the other grounds.

In September, Lowe was ejected from the Casino a second time. The following day, Lowe met with the Casino's chief of security, Mike Sana. Sana told Lowe that he could continue frequenting the Casino if he 1) would use the mail for letters and promotional materials about Rainbow Bonanza, rather than handing it out in the Casino; 2) would not hover around customers while they dined; 3) would not enter areas of the Casino off limits to customers; and 4) would not dial the Casino's managers directly, but would place his telephone calls through the switchboard to allow screening. On October 20, a Casino employee reported that Lowe had sexually harassed her by making demeaning and embarrassing sexual remarks and advances. On October 30, Lowe was informed that he was permanently barred from the Casino. Lowe conceded only that he had complimented an employee on her appearance.

Sana testified at the administrative hearing to Lowe's unreasonable use of the internal telephone system of the Casino, his interference with customers and employees by disrupting gaming activities and meals to promote Rainbow Bonanza, his repeatedly entering the restricted management suite at the

Casino, and his distribution of Rainbow Bonanza promotional materials and correspondence within Casino premises to customers and employees. Documentary evidence of the sexual harassment claim was admitted. Sana stated he had no knowledge of any theft by Lowe or of his distributing a sexually explicit videotape. He stated that Lowe was barred because of his distribution of promotional and other materials in the Casino, his harassment of customers and employees, and his unauthorized use of Casino facilities after the Casino informed him that his services in organizing gin rummy tournaments would no longer be required.

The City upheld the exclusion based upon Sana's testimony, which it found to be credible, and supporting documents regarding Lowe's disruptive activities. It found Lowe's testimony to not be credible.

Lowe filed the appeal of his exclusion from the Casino with the City the day after his exclusion. The City's hearing board conducted a hearing, and denied the appeal in a decision dated November 27, 1995. Lowe filed his petition for writ of mandate challenging the City's ruling on February 26, 1996. The trial court denied the petition, and this appeal followed.

I. *The petition was timely.*

■ Lowe's petition for writ of mandate was filed pursuant to section 1094.5 of the Code of Civil Procedure. Section 1094.6, subdivision (b) of the Code of Civil Procedure states: "Any such petition shall be filed not later than the 90th day following the date on which the decision becomes final."

The City's statement of decision, executed November 27, 1995, states: "A Memorandum of Decision stating the factual findings and conclusions of law in support of this Statement of Decision will be released and made available on November 27, 1995 at 5:00pm. The Memorandum of Decision, along with the Statement of Decision, will be delivered by first class mail to all interested parties. This decision will not be final until the issuance of the Memorandum of Decision on this date, November 27, 1995."

The parties agree that the petition was filed on the 91st day after November 27, 1995. The 90th day, February 25, 1996, fell on a Sunday.

Lowe contends that pursuant to *Cummings* v. *City of Vernon* (1989) 214 Cal.App.3d 919, 922 [263 Cal.Rptr. 97], the 90-day period does not run until notice is provided. He also takes the position that the petition was timely filed pursuant to section 12a of the Code of Civil Procedure, which provides in relevant part: "If the last day for the performance of any act provided or

required by law to be performed within a specified period of time shall be a holiday, then that period is hereby extended to and including the next day which is not a holiday."

*Cummings* v. *City of Vernon* holds that the 90-day period prescribed in Code of Civil Procedure section 1094.6, subdivision (b), does not begin to run until the notice required by subdivision (f) is given. (See also *El Dorado Palm Springs, Ltd.* v. *Rent Review Com.* (1991) 230 Cal.App.3d 335 [281 Cal.Rptr. 327] [90-day period does not begin to run until the subdivision (f) notice is given].) Subdivision (f) states that "[i]n making a final decision . . . the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section." Although we interpret the statement of decision to indicate that notice of the decision was provided on November 27, 1995, the record is silent on the question of when, if ever, notice regarding the judicial review limitations period was given. The City did not show that the petition was barred by the statute of limitations.

## II. *The ordinance is not unconstitutionally vague.*

Lowe contends that City of Commerce Municipal Code section 5.56.010(a)(4) under which he was twice excluded from the Casino is unconstitutionally vague. The ordinance provides for exclusion from gaming premises of any person who is "boisterous, or is otherwise offensive to other persons."

We note first that the ordinance in question does not prescribe a criminal standard of conduct, unlike the statutes at issue in *Ketchens* v. *Reiner* (1987) 194 Cal.App.3d 470 [239 Cal.Rptr. 549], relied upon by Lowe. The statutes in issue in *Ketchens* made it a misdemeanor to " 'upbraid[], insult[], or abuse[]' " a teacher in the presence of a pupil or to " 'insult[] or abuse[]' " a teacher in the presence of other school personnel or pupils on school premises or public sidewalks. (*Id.* at p. 475.) Here, by contrast, the statutory standard is directed to gaming establishments, and the consequence inflicted is the temporary or permanent loss of access to that casino.

Moreover, the ordinance furthers a substantial governmental interest: protection of the safety and welfare of the attending public. Lowe advances the novel notion that a gambling establishment may not bar from its premises a person who distributes fliers and letters promoting his business on the premises, uses its private facilities without permission, and harasses its patrons and employees. In *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734, 737 [227 P.2d 449], the plaintiff was excluded from a race course as a

person of immoral character, based upon evidence that he had committed illegal acts more than six years previously under a statute which required the association to police the grounds and to eject therefrom "known undesirables, touts, persons under suspension or ruled off, persons of lewd or immoral character, and persons guilty of boisterous or disorderly conduct or other conduct detrimental to racing or the public welfare." The court found "immoral character" too vague a standard, but noted that had the plaintiff's acts occurred at the race course,[1] the association would certainly have been justified in ejecting and refusing admittance to him. Here, all of the offensive acts which formed the basis for Lowe's exclusion took place at the Casino. There is no claim that the exclusion was based upon invidious discrimination. (See Civ. Code, § 51.)

In addition, the ordinance is unrelated to the suppression of the free expression of ideas. Here, the governmental interest furthered by the ordinance is the regulation of conduct at gaming establishments. As was the case in *Kahn* v. *Department of Motor Vehicles* (1993) 16 Cal.App.4th 159, 164 [20 Cal.Rptr.2d 6], which upheld a statute authorizing the Department of Motor Vehicles to refuse to issue vanity license plates which " 'carry connotations offensive to good taste and decency,' " the regulation challenged herein does not seek to prevent the expression of a specific viewpoint or opinion and is not directed to the promotion of any particular point of view. We conclude that the ordinance is sufficiently certain.

III. *The ordinance is not preempted by state statute.*

██ Section 19820 of the Business and Professions Code provides for the exclusion from a gaming club of any individual "whose presence in or about gaming clubs would be inimical to the interests of legitimate gaming." Section 19824 states that it "shall not prohibit the enactment, amendment or,

---

[1]The court stated: "In providing the standards to guide proprietors in placing restraints on the exercise of the personal right here involved the Legislature was undoubtedly concerned with the safety and welfare of the attending public. The general objective was the protection of others on the premises. As in other matters involving the exercise of the police power, reasonableness is the governing criterion. The statute justifies the denial of the declared right to persons under the influence of liquor and to persons engaging in boisterous conduct. Such conditions ordinarily are obvious. In these respects the standards do not suggest an inquiry beyond visible or readily ascertainable aspects and exclusion on those grounds is reasonable. Similarly reasonable as a ground of exclusion is the commission when applying for or after admittance, of lewd, immoral, or other acts inimical to the public safety or welfare. A determination concerning the then commission of such acts is likewise made from visible and obvious factors. But the private business, the personal relations with others, the past conduct not on the premises, of a person applying for or admitted to the course, whether or not relevant to indicate his character, are immaterial in the application of the statutory standards under the facts of this case." (*Orloff* v. *Los Angeles Turf Club, supra*, 36 Cal.2d 734, 740-741.)

enforcement of any ordinance by any county, city, or city and county relating to gaming clubs which is not inconsistent with this chapter." The City has by ordinance provided for the exclusion from gaming clubs of any person "whose presence is inimical to the interests of the licensee." (City of Commerce Mun. Code, § 5.56.020(a).) The ordinance thus allows exclusion for a broader range of conduct, but does not directly conflict with the state statute.

The Legislature has expressly stated its intention to exercise concurrent jurisdiction with local governments and to allow them to promulgate their own gaming regulations: "It is the intent of the Legislature, in enacting [the chapter regulating gaming], to have concurrent jurisdiction with local governments over gaming establishments within the State of California and provide uniform, minimum regulation of the operation of those establishments through registration by the Attorney General of those who own or manage gaming clubs. [¶] Nothing in this chapter shall be construed to preempt authority of any city . . . from prohibiting gaming, from imposing any valid local controls or conditions upon gaming, from inspecting gaming premises to enforce applicable state and local laws, or from imposing any local tax or license fee." (Bus. & Prof. Code, § 19801.) Where there is no legislative intent to exclusively control a certain field, local authorities are free to adopt ordinances supplementing the state legislation. (See *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 898 [16 Cal.Rptr.2d 215, 844 P.2d 534]; *Miller* v. *Murphy* (1983) 143 Cal.App.3d 337, 341 [191 Cal.Rptr. 740].) The ordinance is not preempted by state law.

IV. *The City's findings are supported by the record.*

Lowe takes the position that the evidence is insufficient to support a finding that he engaged in or had been convicted of any of the activities listed as grounds for exclusion in section 19820 of the Business and Professions Code: bookmaking, sale of controlled substances, illegal gambling activities, or actions inimical to the interests of legitimate gaming. The City found that Lowe had been properly barred from the Casino based upon subsections (a)(4) and (5) of section 5.56.020 of the City of Commerce Municipal Code. As discussed above, the ordinance is not preempted by state law.

Substantial evidence supports the City's order. Lowe had been twice removed from the premises pursuant to City of Commerce Municipal Code section 5.56.010(a), which provides for removal of any person who "(4) [i]s boisterous, or is otherwise offensive to other persons . . . ." There was evidence that Lowe had promoted his business to other Casino customers

and to employees by passing out brochures, had used private Casino facilities without permission, and had sexually harassed a Casino employee, thus interfering with the Casino's business. The City was well within its discretion in determining that the Casino could properly exclude Lowe.

## V. *Disposition.*

The judgment appealed from is affirmed.

Boren, P. J., and Nott, J., concurred.

A petition for a rehearing was denied November 26, 1997, and appellant's petition for review by the Supreme Court was denied February 3, 1998.