[No. A091317. First Dist., Div. Three. Mar. 29, 2001.]

JENNIFER M., Plaintiff and Appellant, v.
REDWOOD WOMEN'S HEALTH CENTER, Defendant and Respondent.

## COUNSEL

Jason K. Singleton for Plaintiff and Appellant.

Mitchell, Brisso, Delaney & Vrieze, Nancy K. Delaney and Russell S. Gans for Defendant and Respondent.

## OPINION

**McGUINESS, P. J.**—Appellant Jennifer M. appeals from a final judgment dismissing her action against respondent Redwood Women's Health Center (Redwood), a private medical care provider, for violation of the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.)[1] and public disclosure of private facts. Jennifer contends the Information Practices Act protected the confidentiality of her medical records because Redwood was providing medical services to low-income Californians pursuant to contract with the state Medi-Cal program; and she insists that the trial court erred in granting summary adjudication on the basis of its finding as a matter of law that Redwood was not an "agency," as required by the act for purposes of its coverage. We conclude that the trial court's reading of the Information Practices Act was correct, and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Redwood is a private medical clinic specializing in obstetrics and gynecology located in Humboldt County. In January 1999, appellant Jennifer came to suspect she had become pregnant by her boyfriend, Anthony Wolf. At the time, Wolf's previous girlfriend, Kristi Garlinghouse, was also expecting a child by him. At Jennifer's request, Wolf accompanied Jennifer and her two-year-old daughter from another relationship to Redwood for a pregnancy test. The three were in the doctor's examining room for approximately 30 minutes.

---

[1]Unless otherwise indicated, all further statutory references are to the Civil Code.

Kristi Garlinghouse first heard about Jennifer's pregnancy from her former mother-in-law, Daisy Garlinghouse, who told Kristi she had heard "Tony's new girlfriend" was pregnant. Daisy told Kristi she had simply "heard a rumor" to this effect, and did not know the actual name of the allegedly pregnant girlfriend. Daisy had learned of the "rumor" that "a woman was pregnant" with Tony Wolf's child from an unidentified woman who approached Daisy with the information while she was shopping at a local Safeway store. The unidentified woman had only mentioned Wolf's name; Daisy did not know Jennifer, and the latter's name was not included in the rumor she had heard. Daisy did not know anyone who worked at Redwood.[2]

Daisy Garlinghouse also related this "rumor" to Darlene Donaho, Kristi Garlinghouse's niece by marriage. Two or three days after Jennifer's visit to Redwood, Donaho went to Jennifer's residence. Jennifer and Wolf, who were living together at the time, both acknowledged to Donaho that Jennifer was pregnant. Jennifer did not appear reluctant to give Donaho this information. Jennifer told Donaho she did not understand how Daisy would know Jennifer was pregnant. Although (according to Donaho) Jennifer said that she and Wolf "had told people," and thus "[t]here were people that knew," "she didn't think she had told anybody that Daisy would know." For his part, Wolf told Donaho "he was happy and he didn't care if anybody knew," because he and Jennifer were going to have the baby and get married. Like Daisy Garlinghouse, Donaho did not know anyone employed at Redwood.

Jennifer herself had no personal knowledge of the source of the rumor. Although she claimed that Daisy Garlinghouse had a friend who worked at Redwood, she had no evidence or information to support this assertion aside from Wolf's reported hearsay statement to this effect. Upon her attorney's prompting at her deposition, Jennifer suggested that the first name of Daisy's "friend" was "Diane."[3] Diane Kearney, an employee at Redwood, testified that she did not know either Daisy or Kristi Garlinghouse, and was not aware

---

[2] When asked whether she knew if the person from whom she had heard the rumor of Jennifer's pregnancy was an employee of Redwood, Daisy Garlinghouse testified: "I just don't think so." She also testified that she had never been to Redwood, did not know anyone from Redwood, and to the best of her knowledge had never met anyone who worked there.

[3] The following colloquy took place in Jennifer's deposition regarding her assertions regarding the nature of Daisy Garlinghouse's knowledge of and information about the Redwood staff:

"Q [respondent's counsel]. Who is the person that has a friend working in the office that Dr. Anderson works at [i.e. Redwood]?

"A [appellant Jennifer]. Daisy Garlinghouse.

"Q. Who is it that is Daisy's friend [at Redwood]?

"A. I don't have knowledge of that.

of any Redwood employee who may have released medical information about Jennifer. Daisy Garlinghouse herself testified that she did not know Diane Kearney or any other employee of Redwood.

Barbara Joan Sisson, the office manager at Redwood, was responsible for overseeing the clinic's staff. Jennifer telephoned Sisson and complained that her confidential medical information had been disclosed. In response, Sisson called a meeting of the Redwood staff, conferred with them about Jennifer's allegations, and questioned them, both individually and as a group, concerning whether anyone had disclosed any confidential information about Jennifer's pregnancy to anyone else. Every member of the staff responded that he or she had not made any such disclosure. Sisson then met with Jennifer and Wolf to discuss their charges. Jennifer told Sisson "[s]he felt that there had been a breach of confidentiality and she wanted the person fired." Sisson told her: "I talked to all the staff; I don't feel that has happened through our office." Jennifer "just kept saying, 'I want her fired; I want her fired.' " Sisson responded, "I don't know who to fire. . . . I don't have any proof."

On April 2, 1999, Jennifer filed her complaint against Redwood, alleging two causes of action for damages arising from the alleged breach of confidentiality: first, a statutory cause of action for breach of the Information Practices Act (§ 1798 et seq.) arising from Redwood's alleged disclosure of Jennifer's confidential medical information to "un-entitled [sic] third parties"; and second, a cause of action in tort for "public disclosure of private facts." Redwood moved for summary judgment or summary adjudication, arguing that Jennifer's entire complaint was unsupported by any evidence, and the Information Practices Act applied only to government agencies and not to private medical facilities such as itself.

Following extensive discovery, briefing and oral argument, the trial court denied Redwood's motion for summary judgment because of contested

---

"Q. How do you have information that Daisy has a friend working in that office?

"A. Tony told me, and Daisy has lived in that town all her life.

"Q. What did Tony tell you?

"A. I don't recall.

"Q. What is the best that you can remember about Tony's conversation where he told you that Daisy had a friend working in the obstetrician's office?

"A. Tony said Daisy has friends working in that office, to my knowledge. I don't remember the exact wording [of Tony's statement].

"MR. SINGLETON [appellant's counsel]: I believe we do have the first name of the person who works in the office or used to.

"THE WITNESS [appellant Jennifer]: Yeah. The first time, Diane worked there at the time. He [Wolf] pointed out a couple others by face he had seen her with that I don't know the names of."

issues of material fact as to whether Redwood had breached Jennifer's medical confidentiality. However, the trial court did grant summary adjudication as to the first cause of action under the Information Practices Act, on the grounds Redwood did not constitute an "agency" under the terms of the act and therefore was not covered by its provisions. Jennifer thereafter stipulated to dismissal of her second cause of action with prejudice, and the court entered judgment for Redwood. This appeal timely followed.

DISCUSSION

Any party may move for summary judgment in any action or proceeding by contending that the action has no merit, or there is no defense to the action. (Code Civ. Proc., § 437c, subd. (a).) Code of Civil Procedure section 437c, subdivision (c), *requires* a trial court to grant summary judgment if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] (Code Civ. Proc., § 437c, subd. (c); *Saldana v. Globe-Weis Systems Co., supra,* 233 Cal.App.3d at pp. 1511-1512; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 217, p. 629.)

"On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66]; see also *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707]; *Zavala v. Arce, supra,* 58

---

[4]"The motion for summary judgment *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c), italics added.)

This wording, the result of a 1982 amendment based on rule 56(c) of the Federal Rules of Civil Procedure (28 U.S.C.), imposes a *mandatory* duty on the trial court to grant a motion for summary judgment if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, although the former statute gave the trial court discretion to deny the motion, this discretion has now been abrogated. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 & fn. 8 [68 Cal.Rptr.2d 571]; *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1512 [285 Cal.Rptr. 385]; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 217, p. 629.)

Cal.App.4th at p. 925 & fn. 8; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]; *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768]; *Bonus-Built, Inc. v. United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357]; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 235, pp. 646-647.) "We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law." (*Sangster v. Paetkau, supra,* 68 Cal.App.4th at p. 163; see also *Rubenstein v. Rubenstein, supra,* 81 Cal.App.4th at p. 1143; *Zavala v. Arce, supra,* 58 Cal.App.4th at p. 925 & fn. 8; *Transamerica Ins. Co. v. Superior Court* (1994) 29 Cal.App.4th 1705, 1713-1714 [35 Cal.Rptr.2d 259]; *Soules v. Cadam, Inc.* (1991) 2 Cal.App.4th 390, 398-399 [3 Cal.Rptr.2d 6], overruled on other grounds in *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Like the trial court, we must consider all the evidence properly identified in the papers submitted, except that to which objections have been made and sustained by the court. (Code Civ. Proc., § 437c, subd. (c); *Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 561, fn. 2 [42 Cal.Rptr.2d 697].)

■ Applying this standard to the record before us, the sole issue on this appeal is a legal one: does the Information Practices Act apply to a private hospital such as Redwood, on the basis of its contracts with the California Department of Health Services to provide medical services pursuant to the Medi-Cal program and its actual provision in this case of Medi-Cal services to plaintiff Jennifer? This appears to be a question of first impression. On the basis of our analysis of the statutory language itself, we conclude that the Information Practices Act was not intended to cover private entities such as Redwood and is inapplicable under the circumstances of this case. We therefore affirm the judgment of the trial court.

■ The Information Practices Act, enacted in 1977, generally imposes limitations on the right of governmental agencies to disclose personal information about an individual. (*Anti-Defamation League of B'nai B'rith v. Superior Court* (1998) 67 Cal.App.4th 1072, 1078-1079 [79 Cal.Rptr.2d 597]; *Nicholson v. McClatchy Newspapers* (1986) 177 Cal.App.3d 509, 514, fn. 2 [223 Cal.Rptr. 58].) "The statute was designed by the Legislature to prevent misuse of the increasing amount of information about citizens which government agencies amass in the course of their multifarious activities, the disclosure of which could be embarrassing or otherwise prejudicial to individuals or organizations." (*Anti-Defamation League of B'nai B'rith, supra,* 67

Cal.App.4th at p. 1079.) Jennifer's complaint cites and relies on 10 separate provisions of the Information Practices Act. (§§ 1798.1, 1798.3, 1798.19, 1798.24, 1798.45, 1798.46, 1798.47, 1798.48, 1798.53, 1798.63.)

Section 1798.1 declares the right to privacy "a personal and fundamental right," and expressly sets out the Legislature's findings that (a) the right to privacy is "threatened by the indiscriminate collection, maintenance, and dissemination of personal information and the lack of effective laws and legal remedies"; (b) the "increasing use of computers and other sophisticated information technology has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information"; and (c) "[i]n order to protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits." Under section 1798.63, the provisions of the Information Practices Act "shall be liberally construed so as to protect the rights of privacy arising under this chapter or under the Federal or State Constitution."

Section 1798.3, the definitional section of the Information Practices Act, defines "personal information" as "any information *that is maintained by an agency* that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (§ 1798.3, subd. (a), italics added.) In turn, the term "agency" is defined as "every state office, officer, department, division, bureau, board, commission, or other state agency," with the specific exceptions of the California Legislature, the judicial agencies established under article VI of the California Constitution, the State Compensation Insurance Fund, and any "local agency, as defined in subdivision (b) of Section 6252 of the Government Code." (§ 1798.3, subd. (b).) Section 1798.24 provides generally that, with specifically enumerated exceptions, "[n]o agency may disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains . . . ."

The key remedial provisions of the Information Practices Act are sections 1798.53 and 1798.45. Section 1798.53 sets out a civil action for damages for the intentional disclosure of confidential personal information "maintained by a state agency or from 'records' within a 'system of records' . . . maintained by a federal government agency . . . ." In addition, section 1798.53 authorizes an award of exemplary damages of at least $2,500, plus

attorney fees and costs to a successful plaintiff.[5] Section 1798.45 provides for a direct civil action against "an agency" whenever it "[f]ails to comply" with any provision of the Information Practices Act "in such a way as to have an adverse effect on an individual."[6] Sections 1798.46 through 1798.48 in turn provide for the remedies available to the complainant in any successful suit against an "agency" under section 1798.45.[7]

On its face, the Information Practices Act is aimed at barring or limiting the dissemination of confidential personal information—and preventing the misuse of such information—by government *agencies*. (*Anti-Defamation League of B'nai B'rith v. Superior Court, supra,* 67 Cal.App.4th at p. 1079.) Clearly, as a privately owned medical clinic, Redwood is not itself a government agency or entity as defined by section 1798.3, subdivision (b). Thus, the provisions of the Information Practices Act cited by Jennifer, all of

---

[5] Section 1798.53 provides in pertinent part as follows: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency or from 'records' within a 'system of records' (as those terms are defined in the Federal Privacy Act of 1974 . . .) maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains.

"In any successful action brought under this section, the complainant, in addition to any special or general damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the suit.

"The right, remedy, and cause of action set forth in this section shall be nonexclusive and is in addition to all other rights, remedies, and causes of action for invasion of privacy, inherent in Section 1 of Article I of the California Constitution."

[6] Section 1798.45 provides: "An individual may bring a civil action against an agency whenever such agency does any of the following:

"(a) Refuses to comply with an individual's lawful request to inspect pursuant to subdivision (a) of Section 1798.34 [providing for inspection of personal information concerning an individual by that individual].

"(b) Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual.

"(c) Fails to comply with any other provision of this chapter, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."

[7] Sections 1798.46, 1798.47 and 1798.48 provide, respectively, for the assessment of attorney fees and costs of litigation in any individual's successful suit "against the agency" for inspection of that individual's own personal information; actions for injunctions preventing "an agency" from violating provisions of the Information Practices Act; and awards of actual damages, including mental suffering, plus attorney fees and costs in any successful suit against an "agency" under section 1798.45.

which deal with information maintained by "agencies," are inapplicable to this action.

Jennifer nevertheless argues that Redwood is "effectively" an agency by virtue of the fact that it provides medical services to low-income individuals through the California State Medi-Cal program. Jennifer relies on the following language from section 1798.19: "Each agency when it provides by contract for the operation or maintenance of records containing personal information to accomplish an agency function, shall cause, consistent with its authority, the requirements of this chapter to be applied to those records." From this, Jennifer argues "the only rational conclusion is that the [Information Practices Act] will be applied to every contractor and any employee of any contractor who maintains personal records as part of its contract to accomplish agency functions." Extrapolating from this interpretation of section 1798.19, Jennifer asserts that Redwood "accomplish[es] an agency function" by contracting to provide medical service to low-income persons pursuant to a Medi-Cal contract with the State of California, and is thereby "effectively" an agency of the State of California for purposes of the Information Practices Act.

Jennifer's contention misses the mark. Section 1798.19 deals with the obligations of agencies which utilize private contracting parties "for the operation or maintenance of records containing personal information to accomplish an agency function." The statute mandates that *government agencies* enforce the requirements of the Information Practices Act with respect to the records maintained by the private entities with which they contract. On its face, the statute does not mandate any obligations on the part of the private contracting entities themselves; it speaks only of the obligations of the *agencies* that contract with them. In short, the statute places on the given agency the responsibility of ensuring that the privacy requirements of the Information Practices Act are met by the private entities with which it contracts with respect to its own records.

In this case, Redwood does not contract with any government agency "for the operation or maintenance of" that agency's records. The fact that—in company with all medical providers and in compliance with California law—Redwood keeps medical records of its patients does not transform it into a de facto government agency or an ostensible arm thereof. Moreover, even if arguendo Redwood's Medi-Cal contract could be viewed in this way, under section 1798.19 it is not Redwood, but the California State agencies administering Medi-Cal and contracting with Redwood that are themselves

burdened with the responsibility of ensuring that the requirements of the Information Practices Act are met with respect to the records kept *on their behalf.*

Neither is section 1798.53 helpful to Jennifer's case. That provision authorizes a private civil action for invasion of privacy against anyone who "intentionally" discloses personal information "which they know or should reasonably know *was obtained from* personal information *maintained by a state agency* or from 'records' within a 'system of records' (as these terms are defined in the Federal Privacy Act of 1974 . . .) maintained by a *federal* government agency . . . ." (*Ibid.*, italics added.) As seen, Redwood is not itself a government agency or an arm thereof, nor does section 1798.19 make it one. There is no evidence the information at issue was "maintained by" either a state or a federal government agency, or was "obtained" by Redwood from any such agency-maintained source of information. Indeed, this case involves no state or federal agency at all, much less the contents of any agency files.

In support of her argument that Redwood was "accomplishing an agency function" and was therefore "effectively a State agency" for purposes of sections 1798.19 and 1798.53, Jennifer also cites California Code of Regulations, title 22, section 51476. That regulation requires Medi-Cal providers to maintain medical records of Medi-Cal patients and make such records available for inspection by Medi-Cal representatives upon request. The goal of the regulation is simply to prevent fraud and abuse of the Medi-Cal program, by attempting to ensure that patients receiving Medi-Cal benefits are actually receiving medical services. The fact Redwood must maintain such records of its Medi-Cal patients and make them available to Medi-Cal on demand does not convert Redwood into a government agency; nor does this transform Redwood's medical records into private personal information "maintained by" or "obtained from" a government agency.

Significantly, on this appeal Jennifer has cited *no appellate authority* to support her position that the Information Practices Act provides a cause of action against private medical clinics like Redwood. The only case she cited in the trial court is itself completely distinguishable and inapposite. In *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762 [192 Cal.Rptr. 415] (*San Gabriel Tribune*), a newspaper sought disclosure of financial statements prepared in connection with a municipality's exclusive long-term waste disposal contract with a garbage company. When the city refused to disclose these records, the newspaper petitioned for writ of mandamus to

force it to do so. After the trial court denied the writ, the appellate court reversed and issued the writ, holding that the financial data sought was a nonconfidential public record within the meaning of the Public Records Act, Government Code section 6250 et seq. (*San Gabriel Tribune, supra,* 143 Cal.App.3d at pp. 767-781.)

Even this cursory description of *San Gabriel Tribune* reveals the total lack of any connection between that case and this. The issue in *San Gabriel Tribune* was whether mandatory disclosure of *public records* was required by a statute whose purpose is to ensure government accountability and *public access* to information controlled or relied upon by the government. The appellate court in that case was concerned with whether there were any privacy interests that might trump the public disclosure *required* by the statute at issue there; it determined that there were no such legitimate privacy interests. (*San Gabriel Tribune, supra,* 143 Cal.App.3d at pp. 775-781.) The instant case, in contrast, presents the exact opposite problem: whether concededly *private interests* in personal records are protected by a different statute whose purpose is to *prevent* public disclosure of personal information maintained by or on behalf of government agencies. Not surprisingly, in view of the entirely different statutes and public policy considerations at issue in this case, Jennifer seeks the opposite result than that mandated by the appellate court in *San Gabriel Tribune.* Clearly, the latter case has no applicability to this one, and certainly does not support Jennifer's interpretation of the Information Practices Act.

Contrary to Jennifer's assertions on appeal, a ruling that Redwood is not covered by the provisions of the Information Practices Act does not deprive her of a remedy. The Confidentiality of Medical Information Act (§ 56 et seq.) protects medical patients' right to privacy in their personal medical information, and specifically sets out a cause of action for compensatory and punitive damages for patients whose medical information has been improperly disclosed. (§§ 56.10, 56.35.) Jennifer has actually chosen to abandon any cause of action based on these provisions, apparently dissatisfied with the limitations imposed on recovery of attorney fees thereunder. Jennifer's desire for the larger attorney fees recovery potentially available under the Information Practices Act does not justify the unwarranted extension of the language of the latter statute that she argues in this case.

In sum, we conclude that the trial court did not err in granting summary adjudication on Jennifer's cause of action under the Information Practices Act. As a matter of law, that statute is inapplicable to the medical information maintained by a private medical clinic such as Redwood, even when it contracts with Medi-Cal.

## DISPOSITION

The judgment is affirmed. Appellant Jennifer shall pay respondent's costs on appeal.

Corrigan, J., and Parrilli, J., concurred.