[No. H025324. Sixth Dist. Dec. 18, 2003.]

JENNIFER J. GILBERT et al., Plaintiffs and Appellants, v.
CITY OF SAN JOSE, Defendant and Respondent.

## COUNSEL

Coblentz, Patch, Duffy & Bass and William Horsley Orrick, III for Plaintiffs and Appellants.

Richard Doyle, City Attorney, George Rios, Assistant City Attorney, Joseph P. DiCiuccio and Colleen Dee Winchester, Deputy City Attorneys. for Defendant and Respondent.

## OPINION

**PREMO, Acting P. J.**—Plaintiffs,[1] employees of a 40-table gambling establishment known as Bay 101, sued defendant City of San Jose for declaratory relief. They sought a declaration that defendant's Gaming Control Regulatory Ordinance, which required them to be licensed, was unconstitutional because it transgressed their right of privacy. They alternatively sought a declaration that the ordinance was unenforceable because state law preempted it. The parties filed motions for summary judgment. The trial court granted defendant's motion and denied plaintiffs' motion. On appeal, plaintiffs reiterate their arguments. We disagree with plaintiffs. But we modify and then affirm the judgment.

### STATE LAW BACKGROUND

California's Gambling Control Act (GCA) (Bus. & Prof. Code, § 19800 et seq.) states that "longstanding public policy . . . disfavors the business of gambling" but acknowledges that "Gambling establishments are lawful enterprises" that contribute significant taxes and fees to government. (Bus. & Prof. Code, § 19801, subds. (a), (c)(2).) It then goes on to state that "Public trust that permissible gambling will not endanger public health, safety, or welfare requires that comprehensive measures be enacted to ensure that such gambling is free from criminal and corruptive elements, that it is conducted honestly and competitively, and that it is conducted in suitable locations." (Bus. & Prof. Code, § 19801, subd. (f).) To this end, it provides that all persons having a significant involvement in gambling operations must be licensed and regulated. (Bus. & Prof. Code, § 19801, subd. (h).) The GCA later specifies that "key employees" of gambling enterprises must be licensed and defines "key employees" as those employed "in a supervisory capacity or

---

[1] Plaintiffs are: Jennifer J. Gilbert; Michael Rapp; Jackie Rose; John W. St. Croix; Fred M. Abram; Thomas J. Bosch; Stephen Chadband; Susan Deeb; Frank D. Lovaglia; James R. McKee; Jeffrey Lee Robles; Michael J. Sakamoto; Stanley P. Seiff; Charles D. Skidmore; Michael A. Wilson; Ronald E. Zuber; George Bumb, Jr.; Timothy Bumb; Marko J. Trapani, Sr.; and Ronald E. Werner.

empowered to make discretionary decisions that regulate gambling operations . . . ." (Bus. & Prof. Code, §§ 19805, subd. (t), 19854.)

The Gambling Control Commission administers the GCA and, as part of that administration, is empowered to issue or deny licenses. In general, "the commission shall consider whether issuance of the license is inimical to public health, safety, or welfare, and whether issuance of the license will undermine public trust that the gambling operations with respect to which the license would be issued are free from criminal and dishonest elements and would be conducted honestly." (Bus. & Prof. Code, § 19856, subd. (c).) Applications for key-employee licenses require comprehensive information that is unquestionably "personal information," as that term is defined in the Information Practices Act of 1977 (IPA) (Civ. Code, § 1798 et seq.).[2]

Arguably, the GCA prohibits disclosure of personal information under certain circumstances. Business and Professions Code section 19828, subdivision (c), states: "The [Commission] shall not release or disclose any information, documents, or communications provided by an applicant, licensee, or other person, that are privileged pursuant to . . . the Evidence Code, or any other provision of law, without the prior written consent of the holder of the privilege, or pursuant to lawful court order after timely notice of the proceedings has been given to the holder of the privilege." The only apparent applicable privilege in this context is Evidence Code section 1040, which gives a "public entity" a privilege to refuse to disclose "official information" (*id.*, subd. (b)) if disclosure "is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." (*Id.*, subd. (b)(2).) The section, in turn, defines "official information" as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."[3] (*Id.*, subd. (a).)

---

[2] "The term 'personal information' means any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (Civ. Code, § 1798.3, subd. (a).)

[3] The difficulty with arguing that the GCA conditionally prohibits disclosure of personal information is that Business and Professions code section 19828, subdivision (c), is written contemplating that the privilege holder is the individual who has given information to the public entity while the tie-in Evidence Code privilege is written designating the privilege holder as the public entity who holds information given to it by an individual.

The IPA, however, does generally impose limitations on the right of state governmental agencies[4] to disclose personal information about an individual. (*Jennifer M. v. Redwood Women's Health Center* (2001) 88 Cal.App.4th 81, 87 [105 Cal.Rptr.2d 544].) The Legislature enacted the IPA because the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information and because the risk of this threat was magnifying via the increasing use of computers and other sophisticated technology. (Civ. Code, § 1798.1.) In general, the IPA prohibits a state agency, absent written consent, from disclosing personal information linked to the individual to whom the information pertains unless certain exceptions apply. (Civ. Code, § 1798.24.) Relevant to an understanding of plaintiffs' position is the exception allowing disclosure pursuant to the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.). (Civ. Code, § 1798.24, subd. (g).)

The CPRA "provides for the inspection of public records maintained by state and local agencies." (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 822 [108 Cal.Rptr.2d 870].) The Legislature enacted the CPRA in 1968 to give the public access to information in possession of public agencies in furtherance of the notion that government should be accountable for its actions and, in order to verify accountability, individuals must have access to government files. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].) But "Recognition of the importance of preserving individual privacy is also evident in [the CPRA]. The [C]PRA begins with the phrase: 'In enacting this chapter, the Legislature [is] mindful of the right of individuals to privacy . . . .' [Citation.]" (*Id.* at p. 651, fn. 6.) "Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy." (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1017 [88 Cal.Rptr.2d 552].)

The CPRA "includes two exceptions to the general policy of disclosure of public records: (1) *materials expressly exempt from disclosure pursuant to* [Government Code] section 6254[, which includes some personal information ('Records of . . . investigations . . . for . . . licensing purposes . . . .' (subd. (f)); 'Statements of personal worth or personal financial data required by a licensing agency and filed by an applicant with the licensing agency to establish his or her personal qualification for the license . . . .' (subd. (n)) and information that is privileged under the Evidence Code (subd. (k))]; and (2) the 'catchall exception' of [Government Code] section 6255, which allows a

---

[4] Strictly speaking, the IPA is applicable to "agencies." "Agency," in turn, is defined as a state office or the like, with certain exclusions. (Civ. Code, § 1798.3, subd. (b).) One of the exclusions is a "local agency," which is, in turn, defined as a city, county, or the like. (Civ. Code, § 1798.3, subd. (b)(4); Gov. Code, § 6252, subd. (b).)

government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly outweighs the public interest served by disclosure." (*City of San Jose v. Superior Court, supra,* 74 Cal.App.4th at p. 1017, fns. omitted.) But the CPRA does not require an agency to invoke an exception. Government Code section 6254 states: ". . . nothing in this chapter shall be construed to require disclosure of records that are any of the following [express exceptions]." Under this language, the CPRA merely permits an agency to invoke an exception.

## DEFENDANT'S ORDINANCE

Defendant's Gaming Control Regulatory Ordinance (Ordinance) (San Jose Municipal Code (SJMC), § 16.02.010 et seq.) mirrors the GCA to some extent. It defines key employees, though in broader terms than the GCA. (SJMC, § 16.02.420.) It requires key employees to be licensed. (SJMC, §§ 16.32.600–16.32.620.) And it gives the chief of police the authority to grant or deny licenses (SJMC, § 16.32.160) after consideration of an applicant's qualifications gleaned from "all information the administrator requires in order to carry out the requirements and policies of [the Ordinance]." (SJMC, § 16.32.080; see also SJMC, §§ 16.32.060 [affirmative criteria for license], 16.32.070 [disqualification criteria for license].) The Ordinance, however, does not have provisions restricting disclosure of personal information.

## UNDISPUTED FACTS

Plaintiffs are composed of three groups of key employees as defined by the Ordinance. One group does not work directly with gaming and is not required to be licensed by the GCA; another group works directly with gaming and has submitted applications and obtained provisional key-employee status from the state under the GCA; and a third group is composed of owners who have submitted applications and obtained temporary licenses from the state under the GCA.

Defendant enacted the Ordinance in 1999. It began enforcing it in 2001 by issuing each key employee a provisional license and requiring each key employee to apply for a license via an application seeking personal information similar to the information required by state GCA applications. Plaintiffs resisted because they claimed that defendant did not have an enforceable procedure to safeguard the privacy of personal information. They filed this action and sought a preliminary injunction to restrain defendant from requiring them to submit license applications. The trial court denied plaintiffs'

motion, and plaintiffs submitted their applications.[5] The parties then advanced their motions for summary judgment.

Defendant's evidence established the following: (1) upon a request for license application information under the CPRA, defendant's policy is to notify the person whose records are requested in order to permit time to file a court action seeking to prevent the release of information; (2) defendant's policy is to object to requests for public disclosure of personal information that trigger any privacy interest under the California Constitution or where the public interest in protecting privacy clearly outweighs the public interest in disclosure; and (3) defendant maintains key-employee applications in locked cabinets within the Office of Gaming Control and only Gaming Control staff and the Commander of the Vice/Special Intelligence Unit have access to those cabinets.

Plaintiffs did not dispute this evidence. They only asserted that defendant had refused (1) to commit to the policies in the future, or (2) to commit to notifying plaintiffs in the event that it changes the policies.

## PLAINTIFFS' CONTENTION

Plaintiffs contend that the Ordinance transgresses their state constitutional right to privacy because it does not provide safeguards to protect personal information.[6] Plaintiffs summarize: "The issue before the Court boils down to

---

[5] Defendant claims that this action is moot because plaintiffs submitted their applications, thereby disclosing the personal information they wished to withhold. But plaintiffs seek a declaration that the Ordinance is unconstitutional. If they prevail, they conceivably would be entitled to a return of their applications and attendant information. We therefore conclude that the action is not moot.

[6] Plaintiffs also argue that the Ordinance transgresses their federal constitutional right to due process because there is no rational relationship between the purpose of the Ordinance and the application process, given that the state has already subjected key employees to the same or a similar application process. We summarily reject this point. If the state permits defendant to concurrently regulate gaming activities, then nothing is irrational about a process that requires license applicants to appear locally and disclose relevant information locally that is maintained locally for the convenience of local regulators. Thus, the point is dependent upon plaintiffs' secondary contention that the GCA preempts the Ordinance. We also summarily reject plaintiffs' argument that the Ordinance transgresses the federal constitutional right against abridging privileges and immunities in that the Ordinance interferes with the pursuit of lawful employment in a lawful manner. As to this point, plaintiffs assert that the "duplicative governmental regulation unnecessarily impinges on the . . . right to pursue lawful employment in a lawful manner." But they fail to explain how this point is distinct from the due process point. This is likely because it is not distinct. If defendant is entitled to regulate plaintiffs' employment and the particular regulation is rationally related to the overall purpose of regulation (passing due process muster), a distinct privileges and immunities analysis should reach the same result as a due process analysis. We finally summarily reject plaintiffs' fallback argument that plaintiffs raised a triable issue of material fact in opposition to defendant's

these facts. [Defendant] concedes that the Key Employees are required to provide extensive private information in order to be licensed as key employees through [defendant's] procedure. [Defendant] concedes that the information contained in those applications is private and personal. [Defendant] refuses to provide any enforcement mechanism to guarantee that [it] will protect the Key Employees' constitutional right to privacy. [Defendant] will not guarantee a minimal written policy of notice of public disclosure requests, or even a guarantee of notice of change of past practice. [¶] It is feasible for [defendant] to provide enforceable safeguards to protect the Key Employees' private information."

## CONSTITUTIONALITY OF THE ORDINANCE

■ The California Constitution contains an explicit right of privacy that operates against private and governmental entities. (Art. I, § 1; *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 439 [57 Cal.Rptr.2d 46].) "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at p. 35.) Constitutional privacy interests are not absolute, however. They must be balanced against other important interests. In countering a prima facie showing of such a privacy invasion, a defendant may argue that the invasion is justified because it substantially furthers one or more countervailing interests. (*Id.* at pp. 37, 40.)

■ Statutes are to be construed, if possible, so as to avoid potential constitutional problems. (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 194 [228 Cal.Rptr. 169, 721 P.2d 50].) We can so construe the Ordinance.

In *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977], a bank sued a borrower to recover the balance of a construction loan, and the borrower sued the bank for misleading him that additional financing would be provided. The borrower sought discovery of

---

motion. (Code Civ. Proc., § 437c, subd. (c).) According to plaintiffs, they presented facts to the effect that defendant has disclosed nontrivial private information in the past. But plaintiffs concede that the "facts are not germane to [whether the] Ordinance itself is unconstitutional . . . ." They claim that the facts are germane to one of defendant's arguments. Since material facts are those in the pleadings that are essential to a claim or defense, not argument, we pass the point without further consideration. (Code Civ. Proc., § 431.10; *Gantman v. United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1569 [284 Cal.Rptr. 188].)

bank records concerning third party customers. The bank sought a protective order on the basis that it was obligated to protect its customers' privacy. The trial court found that no privilege protected the information from discovery and ordered discovery. On the bank's petition for a writ of mandate, the Supreme Court agreed that no privilege, common law, or statutory authority precluded discovery and noted that, under existing law, "when bank customer information is sought, the bank has no obligation to notify the customer of the proceedings, and disclosure freely takes place unless the bank chooses to protect the customer's interests and elects to seek a protective order on his behalf." (*Id.* at p. 657.) However, it held that the newly-enacted constitutional right to privacy compelled recognition of "some limited form of protection for confidential information given to a bank by its customers." (*Id.* at p. 656.) It then balanced the right of civil litigants to discover relevant facts with the right of bank customers to maintain reasonable privacy regarding their financial affairs as follows: "The case involves opposing considerations, personal and financial, and it is readily apparent that the existing discovery scheme is inadequate to protect the bank customer's right of privacy which now is constitutionally founded. The protection of such right should not be left entirely to the election of third persons who may have their own personal reasons for permitting or resisting disclosure of confidential information received from others. On the other hand, we readily acknowledge that relevant bank customer information should not be wholly privileged and insulated from scrutiny by civil litigants. The Legislature has not so directed, and in expressing a contrary position we said in *In re Lifschutz* (1970) 2 Cal.3d 415, 425 [85 Cal.Rptr. 829, 467 P.2d 557], 'In order to facilitate the ascertainment of truth and the just resolution of legal claims, the state clearly exerts a justifiable interest in requiring a businessman to disclose communications, confidential or otherwise, relevant to pending litigation. [Citations.]' [¶] Striking a balance between the competing considerations, we conclude that before confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the pendency and nature of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at pp. 657–658.)

In *Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072 [21 Cal.Rptr.2d 840], a patient complained to the state Board of Psychology about her psychologist, and the board initiated a disciplinary proceeding. The psychologist served subpoenas duces tecum on the patient's physicians, psychotherapists, and attorneys without notice to the patient. The records were produced. When the patient discovered the disclosure, she filed

a petition for a writ of mandate to quash the subpoenas and recover the records on the ground that service of the subpoenas without notice to her violated her right of privacy. The trial court granted the petition. On appeal, the psychologist contended that the subpoenas complied with the Government Code, which authorized issuance of administrative subpoenas duces tecum in accordance with incorporated sections of the Code of Civil Procedure—a Code of Civil Procedure section that required notice to a consumer whose records are sought was not incorporated into the Government Code scheme. In affirming the judgment, the court borrowed the "road map" from *Valley Bank of Nevada* to resolve the issue. It concluded as follows: "the Legislature's failure to incorporate the notice provisions of Code of Civil Procedure section 1985.3 into Government Code section 11510 could not and does not diminish rights created by the California Constitution and that here, as in *Valley Bank*, overriding constitutional considerations compel recognition of some form of protection for information which is indisputably confidential. [Citations.] If this was true in *Valley Bank* in the absence of a statutory privilege to protect the bank's records, it must a fortiori be true here, where it appears all of the requested records were in fact privileged under express provisions of the Evidence Code. [Citations.]" (*Sehlmeyer v. Department of General Services, supra,* 17 Cal.App.4th at pp. 1079–1080, fn. omitted.) The court then balanced the rights of administrative litigants to discover relevant facts with the privacy rights of third party witnesses as follows: "As there is no provision in the existing administrative scheme to protect the third party witness's constitutional right to privacy or [the patient's] statutory privilege rights, it falls to us and, ultimately, to the administrative tribunal to do the balancing. [¶] Striking a balance between these competing considerations, we conclude that before confidential third party personal records may be disclosed in the course of an administrative proceeding, the subpoenaing party must take reasonable steps to notify the third party of the pendency and nature of the proceedings and to afford the third party a fair opportunity to assert [his or] her interests by objecting to disclosure, by seeking an appropriate protective order from the administrative tribunal, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Id.* at pp. 1080–1081, fns. omitted.)

■ The procedure adopted in *Valley Bank of Nevada* and *Sehlmeyer* works just as well in our context. Because defendant's failure to incorporate privacy safeguards into the Ordinance cannot diminish privacy rights created by the California Constitution, it falls to us to recognize a form of protection for information that is indisputably confidential. We therefore hold that, before defendant discloses personal information collected under the Ordinance, it must take reasonable steps to notify the person to whom the information pertains of the pendency and nature of the request for the information and to afford the person a fair opportunity to object to disclosure,

to join in resisting disclosure, or to institute appropriate legal proceedings to resist disclosure or limit the scope or nature of the matters sought to be discovered.

## PREEMPTION

Plaintiffs argue that the GCA preempts the Ordinance because the Ordinance duplicates the GCA in requiring key employees to provide personal information. There is no merit to this claim.

The Ordinance states at the outset: "It is the intent of the city council to regulate cardrooms and gaming activities in this city concurrently with the state of California, to the extent authorized by, and as required by, the [GCA] . . . ." (SJMC, § 16.02.010, D.)

"Where there is no legislative intent to exclusively control a certain field, local authorities are free to adopt ordinances supplementing the state legislation." (*Lowe v. City of Commerce* (1997) 59 Cal.App.4th 1075, 1082 [69 Cal.Rptr.2d 356].)

Here, the Legislature has expressly stated its intention to exercise concurrent jurisdiction with local governments and to allow them to promulgate their own gambling regulations. Business and Professions Code section 19803 states that it is the intent of the Legislature "to provide uniform, minimum standards of regulation" and "[n]othing . . . shall be construed to preclude" any local authority "from imposing more stringent local controls or conditions upon gambling than are imposed by [the GCA]."

Plaintiffs state that the GCA does not allow local authorities to vary the acceptability of applicants as key employees and there is no reason to allow local control over employment given the state control. But, again, Business and Professions Code section 19803 expressly states that the GCA provides only "minimum standards" and permits "more stringent local controls." (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244] [when the language of a statute is clear, a court interpreting it should follow its plain meaning].)

## DISPOSITION

The judgment is modified to state the following. "Before defendant discloses personal information collected under the Ordinance, it must take reasonable steps to notify the person to whom the information pertains of the pendency and nature of the request for the information and to afford the

person a fair opportunity to object to disclosure, to join in resisting disclosure, or to institute appropriate legal proceedings to resist disclosure or limit the scope or nature of the matters sought to be discovered." As so modified, the judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.