Filed 11/29/22  Clark v. Dept. of Corrections and Rehabilitation CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MICHAEL CLARK, | C092802 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00252706-CU-PO-GDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Respondents. | |

This is an invasion of privacy case. Plaintiff Michael Clark is a self-represented litigant who was formerly incarcerated in state prison. He filed this lawsuit against the California Department of Corrections and Rehabilitation (CDCR) and 31 of its employees (collectively, defendants), alleging that he suffered adverse determinations while incarcerated due to defendants' failure to maintain accurate records, including their failure to amend and/or correct inaccurate records upon his request, in violation of the

1

Information Practices Act of 1977 (IPA), Civil Code section 1798 et seq.[1] Clark appeals from the judgment of dismissal entered after the trial court sustained a demurrer without leave to amend. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

Because this appeal is from an order sustaining a demurrer, we take the facts from the operative complaint, the allegations of which are deemed true for the limited purpose of determining whether Clark has stated a viable cause of action. (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

At all relevant times, Clark was an inmate at California State Prison, Corcoran. The individual defendants in this case are CDCR employees, including, but not limited to, correctional officers, correctional counselors, and associate wardens.

In early March 2018, three CDCR employees retaliated against Clark for reporting misconduct, specifically "unlawful criminal activities" in which these employees wanted Clark to participate. The retaliation was in the form of entering false information in CDCR's "system of records," specifically that Clark conspired to incite a riot and was responsible for a "staff separation alert." The purpose of the retaliation was to punish Clark by "diminish[ing] [his] opportunity for parole consideration" and causing him "injury or adverse determinations."

In early March 2018 and in early April 2018, various CDCR employees knowingly maintained and/or failed to expunge and/or correct the inaccurate records.

In early April 2018, a CDCR employee erroneously informed Clark that the inaccurate records were amended in order to induce him to withdraw his inmate appeal requesting such relief. This employee knew or should have known that the inaccurate

---

[1] Undesignated statutory references are to the Civil Code.

records remained in CDCR's "system of records," and other employees maintained the inaccurate records and made decisions adverse to Clark based on them.

In late April 2018 and again in late July 2018, various CDCR employees refused to amend the inaccurate records, even though they knew the records were inaccurate and that they were required to expunge and/or correct them. These employees also "made decisions adverse to [Clark] upon them," and some of the employees "maintained additional inaccurate records."

In early June 2018 and again in late July 2018, various CDCR employees refused to process Clark's inmate appeal requesting amendment of the inaccurate records, and this decision was later upheld and enforced by other employees. These employees knew the records were inaccurate, but they refused to amend them. Instead, they made "decisions adverse to [Clark]," and maintained "additional inaccurate records."

Beginning in early March 2018 and "continuing," the CDCR, the warden of the prison, and the secretary of the CDCR, failed to "properly train, supervise, and discipline themselves and their subordinate employees" in the provisions and requirements of the IPA.

Clark broadly alleges that the above-described conduct "resulted in numerous adverse decisions to [his] character, rights, and opportunities causing the continuing damages and injuries." He further alleges that some or all of the CDCR employees in this action acted in concert to retaliate against and punish him for refusing to engage in "unlawful criminal activities" and/or to "cover-up corruption within CDCR." Although not included in the operative pleading, Clark explains in his opening brief on appeal that he was retaliated against for reporting corruption within the CDCR, specifically "drug and contraband smuggling and promoting violence."

*Procedural Background*

In March 2019, Clark filed a verified complaint against the CDCR and 31 of its employees (e.g., correctional officers, correctional counselors, associate wardens),

3

alleging 10 negligence claims predicated on violations of the IPA (i.e., failure to maintain accurate records), and one negligence claim predicated on the failure to properly train, supervise, and discipline CDCR employees regarding their duties under the IPA (e.g., maintain accurate records).

In December 2019, the trial court sustained defendants' demurrer with leave to amend, finding that Clark failed to allege sufficient facts to state a viable claim under the IPA, including facts showing that he suffered any harm from the allegedly inaccurate records. The trial court also found that the defendants were immune from liability under provisions of the Government Code.

In January 2020, Clark filed a verified first amended complaint (the operative complaint) against the CDCR and the same 31 employees (collectively, individual defendants). Clark, again, alleged 10 negligence claims predicated on violations of the IPA (i.e., failure to maintain accurate records), and one negligence claim predicated on the failure to properly train, supervise, and discipline CDCR employees regarding the "provisions and requirements of the IPA," specifically the duty to maintain accurate records. Clark also added a claim for declaratory relief, which sought a declaration of the parties' rights and duties under the IPA and certain state regulations and other rules purportedly applicable to CDCR employees.

The allegations and claims in the operative complaint were similar to the allegations and claims alleged in the original complaint. However, the operative complaint omitted the allegation that Clark was found "not guilty" of the "staff separation alert and conspiracy to incite a riot charges," which were "dismissed" in late March 2018. The operative complaint also included less detail about the wrongful conduct of the individual defendants, and omitted other allegations, including the allegation that the inaccurate records (i.e., Clark conspiring to incite a riot and causing a staff separation alert) were relied upon at classification hearings in April 2018 to allow defendants to "punish and harm" Clark with the false allegations.

4

As for relief, the operative complaint sought "damages, declaratory, and injunctive relief" based on defendants' "negligent, retaliatory violations of the IPA." The request for monetary damages, however, was limited to the individual defendants; Clark only sought declaratory and injunctive relief against the CDCR. As for monetary damages, the operative complaint alleged that the defendants' failure to maintain accurate records caused, among other things, the following harm: "violation of informational privacy," "mental suffering," segregation, "loss of beneficial use and possession of personal property," emotional harm, loss of the ability to litigate several meritorious actions, economic loss of $6,300, denial of parole for three years, and "numerous determinations adverse to his rights, character, and opportunities." The operative complaint also sought punitive damages.

In July 2020, the trial court sustained defendants' demurrer to the operative complaint for the same reasons it sustained the demurrer to the original complaint, with the additional finding that the new declaratory relief claim failed because it was "effectively duplicative" of Clark's other "meritless" claims. The trial court also found that, to the extent Clark was alleging claims predicated on a common law negligence theory, he failed to allege facts that would support a finding that any CDCR employee owed him a duty of care or that he suffered any compensable injury as a result of a breach of such a duty. Finally, the court noted that Clark's request for injunctive relief did not "save his complaint from [defendants'] demurrer" because injunctive relief is a remedy, not a cause of action, and Clark failed to plead any viable claim. Because the trial court concluded that Clark had no reasonable probability of stating a viable claim against any defendant, it sustained defendants' demurrer without leave to amend.

Clark timely appealed. The appeal was dismissed and later reinstated; the case was fully briefed on July 13, 2022, and assigned to this panel on July 29, 2022. The parties waived argument and the case was deemed submitted.

5

## DISCUSSION

## I

### *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. (*Chapman v. Skype Inc*. (2013) 220 Cal.App.4th 217, 225; Code Civ. Proc., § 430.10, subd. (e).)  On appeal from a judgment based on an order sustaining a demurrer, we accept as true the well-pleaded allegations in the complaint.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' " (*Ibid*.)  We independently determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  We read the complaint as a whole and its parts in their context to give the complaint a reasonable interpretation. (*Evans*, at p. 6.)  "We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031; see also *Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730.)  We review the trial court's ruling, not its reasoning or rationale.  (*Kahan*, at p. 730.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

II

*Negligence Claims*

Clark contends the trial court erred in finding he failed to state any viable negligence claim predicated on a violation of the IPA. We disagree.

A. *The IPA*

"Enacted in 1977, the IPA generally limits the right of governmental agencies to disclose personal information about an individual and imposes liability on agencies and individuals for improperly disclosing personal information maintained by agencies." (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 641 (*Hurley*).) "The statute was designed by the Legislature to prevent misuse of the increasing amount of information about citizens which government agencies amass in the course of their multifarious activities, the disclosure of which could be embarrassing or otherwise prejudicial to individuals or organizations." (*Anti-Defamation League of B'nai B'rith v. Superior Court* (1998) 67 Cal.App.4th 1072, 1079.)

"Section 1798.1 [of the IPA] declares the right to privacy 'a personal and fundamental right,' and expressly sets out the Legislature's findings that (a) the right to privacy is 'threatened by the indiscriminate collection, maintenance, and dissemination of personal information and the lack of effective laws and legal remedies'; (b) the 'increasing use of computers and other sophisticated information technology has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information'; and (c) '[i]n order to protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits.' " (*Jennifer M. v. Redwood Women's Health Center* (2001) 88 Cal.App.4th 81, 88.)

Under the IPA, an "agency" is defined as "every state office, officer, department, division, bureau, board, commission, or other state agency," with exceptions not relevant here. (§ 1798.3, subd. (b).) The IPA defines "personal information" as "any information

7

that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. It includes statements made by, or attributed to, the individual." (§ 1798.3, subd. (a).) The IPA defines "disclose" as "to disclose, release, transfer, disseminate, or otherwise communicate all or any part of any record orally, in writing, or by electronic or any other means to any person or entity." (§ 1798.3, subd. (c).) "The term 'maintain' includes maintain, acquire, use, or disclose." (§ 1798.3, subd. (e).)

Under the IPA, an agency must "maintain all records, to the maximum extent possible, with accuracy, relevance, timeliness, and completeness. [¶] Such standard need not be met except when such records are used to make any determination about the individual." (§ 1798.18.) And, if asked to correct a record, an agency must timely do so or advise the individual making the request why it will not do so. (§ 1798.35, subds. (a), (b).)

If an agency violates its duties under the IPA, it may be subject to civil liability for damages suffered by an individual. (§ 1798.45.) As relevant here, an individual may bring a civil action against an agency whenever such agency fails to: (1) "maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, *a determination is made which is adverse to the individual*"; or (2) "comply with any other provision of [the IPA], or any rule promulgated thereunder, in such a way as to have an *adverse effect on an individual*." (§ 1798.45, subds. (b), (c), italics added.) In any suit brought under the provisions of subdivision (b) or (c) of section 1798.45, an agency shall be liable to the individual for actual damages sustained by the individual, including damages for mental

8

suffering, and the costs of the action together with reasonable attorney's fees. (§ 1798.48, subds. (a), (b).)

An individual may also be subject to civil liability under the IPA. (§ 1798.53.) In relevant part, the IPA provides: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency . . . shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains." (§ 1798.53.) "In any successful action brought under this section, the complainant, in addition to any special or general damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the suit." (*Ibid*.)

B. *Relevant Governmental Immunity Rules*

" 'Public employees are liable for injuries resulting from their acts or omissions to the same extent as private persons, except where otherwise exempted or immunized by law. [Citation.] Public entities are correspondingly liable for the negligent acts or omissions of their employees acting within the scope of their employment except where either the employee or the public entity is immunized from liability by statute.' " (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1048; see Gov. Code, §§ 815.2, 820.)

In California, there is no common law tort liability for public entities. (*Torres v. Department of Corrections & Rehabilitation* (2013) 217 Cal.App.4th 844, 850; *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 688.) Under the Tort Claims Act, public entities are immune from tort liability "[e]xcept as otherwise provided by statute." (Gov. Code, § 815, subd. (a); *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 [tort liability of a public entity must be based on a specific statute declaring it to be liable, or at least creating some specific duty].)

"Ordinarily, negligence may be pleaded in general terms and the plaintiff need not specify the precise act or omission alleged to constitute the breach of duty. [Citation.] However, because under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus, 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.' " (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) Further, "[i]t is a plaintiff's responsibility to plead ' "facts sufficient to show [their] cause of action lies outside the breadth of any applicable statutory immunity." ' " (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585.)

Generally, a public entity is not liable for an injury to any prisoner. (Gov. Code, § 844.6, subd. (b).) And a public entity is not vicariously liable for injuries to prisoners caused by its employees. (*Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1383.)

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Gov. Code, § 821.6.) Government Code section 821.6 immunizes a public employee who investigates, institutes, or prosecutes a disciplinary proceeding. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048.) "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Ibid.*; see *Richards v. Department of Alcoholic Beverage Control* (2006) 139 Cal.App.4th 304, 318 ["Courts liberally construe 'administrative proceeding' to include investigatory and other activities in preparation for more formal proceedings"].)

10

C. *Analysis*

As we next explain, we conclude the trial court properly sustained defendants' demurrer to Clark's negligence claims, which (as we have noted *ante*) are predicated on violations of the IPA (i.e., failure to maintain accurate records), and the failure to train/supervise/discipline CDCR employees regarding the "provisions and requirements of the IPA," specifically the duty to maintain accurate records.

1. *The IPA*

The IPA gives individuals the right to bring a civil action against an agency (§ 1798.45) and/or individuals (§ 1798.53) for invasion of privacy, and thus potentially provides an exception to governmental immunity rules. However, as we will explain, the facts alleged in the operative complaint do not state a viable claim predicated on a violation of the IPA.

As an initial matter, we note that Clark's negligence claims predicated on violations of the IPA are only brought against the individual defendants. As for those defendants, the operative complaint does not allege any facts that would support a finding that any individual defendant is subject to civil liability under the IPA. The operative complaint makes clear that the alleged violations of the IPA are based on the individual defendants' failure to maintain accurate records, including the failure to correct and/or amend inaccurate records. However, under the IPA, a civil action predicated on the failure to maintain accurate records is limited to government agencies. (§§ 1798.18, 1798.45, subd. (b); see *Hurley, supra*, 20 Cal.App.5th at pp. 642, 651.) Clark has not cited, and we are not aware of, any case law supporting his contention that the individual defendants fall within the meaning of "agency" for purposes of civil liability under the IPA. But even assuming for the sake of argument that Clark is correct, his claims against the individual defendants for negligent violations of the IPA fail because the operative complaint does not allege any facts that would support a finding Clark suffered any

11

adverse determination due to the failure of any individual defendant to maintain accurate records.[2]

Although not included in the operative complaint, the original complaint alleged Clark was found "not guilty" of the "charges" that he conspired to incite a riot and caused a "staff separation alert," and those charges were dismissed in late March 2018. The operative complaint does not identify any specific adverse determination that resulted from the allegedly inaccurate records (i.e., the records accusing Clark of conspiring to incite a riot and causing a staff separation alert), even though the trial court specifically sustained the demurrer to the original complaint on the ground that Clark failed to allege facts showing how he was harmed by the allegedly inaccurate records. The operative complaint simply alleges, without more, that "[d]efendants' violations of their duties [under the IPA] resulted in numerous adverse decisions to [his] character, rights, and opportunities causing the continuing damages and injuries." This vague and conclusory allegation is insufficient to state a viable negligence claim. And Clark has not identified any adverse determination in his appellate briefing. Instead, he makes a vague claim that he was "injured with each adverse decision taken on the records (not to mention loss of privileges, opportunities, and an additional 3 years in prison)."

2. *Common Law Negligence*

To the extent Clark attempts to state common law negligence claims, he has failed to do so.

---

[2] We need not and do not decide whether the individual defendants fall within the meaning of "agency" for purposes of civil liability under the IPA. However, we note that a person acting solely in their official capacity as a state employee is not subject to civil liability under the IPA. (See § 1798.53.) Moreover, any civil action brought under the IPA against an individual (as opposed to an agency) must be predicated on the intentional disclosure of non-public personal information (§ 1798.53), which Clark does not allege.

As for the individual defendants, to the extent Clark's negligence claims are predicated on the conduct of CDCR employees in connection with the institution, investigation, or prosecution of a disciplinary proceeding against Clark, they are barred by the immunity provided in Government Code section 821.6. We need not decide whether all of the negligence claims against the individual defendants are barred under this provision. Even if we assume without deciding that some of Clark's claims fall outside the scope of the immunity provided in Government Code section 821.6, the operative complaint does not state a viable negligence claim against any individual defendant (or the CDCR), as there are no facts supporting a finding that Clark suffered actual harm as a result of the alleged negligence. (See *Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1103 [an essential element of a claim for negligence is damage proximately caused by the breach of a legal duty]; *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1509 [unless a party suffers damages, i.e., appreciable and actual harm, as a consequence of negligent conduct, he cannot establish a cause of action for negligence].) Further, to the extent Clark attempts to state a negligence claim against the CDCR predicated on its negligent failure to train/supervise/discipline employees regarding the provisions of the IPA, any such claim would be barred by the immunity provided in Government Code sections 815 and 844.6.

III

*Declaratory Relief*

We see no error in the trial court's decision to sustain defendants' demurrer to the declaratory relief claim, which sought a declaration of the parties' rights and duties under the IPA and certain state regulations and rules purportedly applicable to CDCR employees.

To state a claim for declaratory relief, the plaintiff must allege facts showing there is a dispute between the parties concerning their legal rights, constituting an "actual controversy" within the meaning of the declaratory relief statute. (Code Civ. Proc.,

13

§ 1060; *Artus v. Gramercy Towers Condominium Assn*. (2018) 19 Cal.App.5th 923, 930.) A claim for declaratory relief fails when it is " ' "wholly derivative" ' of other failed claims." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191-192; *Ball v. FleetBoston Financial Corp*. (2008) 164 Cal.App.4th 794, 800.) The allegations in the operative complaint make clear that Clark's declaratory relief claim is wholly derivative of his other failed claims. And we see no abuse of discretion in the trial court's decision to decline to exercise the declaratory judgment power in this case. (See Code Civ. Proc., § 1061 [court may refuse relief where declaration "is not necessary or proper at the time under all the circumstances"]; *Gilb v. Chiang* (2010) 186 Cal.App.4th 444, 458 [even if an actual controversy exists to support a declaratory relief action, it is within the trial court's discretion to grant or deny declaratory relief].)

IV

*Injunctive Relief*

We conclude the trial court properly found that Clark's request for injunctive relief was not a valid basis to overrule defendants' demurrer, as a request for injunctive relief is not an independent cause of action. (*Shamsian v. Atlantic Richfield Co*. (2003) 107 Cal.App.4th 967, 984.) In short, because we have affirmed the trial court's sustaining of defendants' demurrer to all of the claims alleged in the operative complaint, Clark cannot seek injunctive relief as a stand-alone claim against defendants. (See *id*., p. 985.)

V

*Leave to Amend*

Having determined that the operative complaint does not state a viable claim for relief against any defendant, we must determine whether the trial court abused its discretion in sustaining defendants' demurrer without leave to amend. As noted *ante*, the burden of proving a reasonable possibility that a complaint can be amended to state a viable claim falls "squarely on the plaintiff." (*Blank, supra*, 39 Cal.3d at p. 318.) "To

14

satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id.* at p. 44.)

The record does not disclose that Clark asked the trial court to allow amendment, and nowhere in his appellate briefing does he attempt to show how the operative complaint can be amended to state a viable claim against any defendant. Instead, he asserts, without elaboration, that it was error for the trial court to sustain the demurrer to the operative complaint without leave to amend. Under these circumstances, Clark has failed to carry his burden to show that the trial court abused its discretion in sustaining defendants' demurrer without leave to amend. (*Blank, supra*, 39 Cal.3d at p. 318.)

VI

*Motion to Compel Discovery*

Clark contends the trial court erred in denying his motion to compel production of documents. However, he makes no effort to show how he was prejudiced by the trial court's ruling. Thus, we need not and do not decide whether the trial court erred in this regard. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Waller v. TJD* (1993) 12 Cal.App.4th 830, 833.)

15

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Krause, J.